## THE UNITY COMPANY
### *v.*
## THE EQUITABLE TRUST COMPANY *et al.*

*Opinion filed October 26, 1903.*

1. PLEADING—*objection to unsigned replication must be made below.* No advantage arising from the plaintiff's failure to sign his replication to an answer can be claimed by the defendant if he joins in taking proof, and a hearing on proof is had without objection.

2. BONDS—*statements of trustee not binding on bondholders.* Holders of bonds secured by a trust deed to a corporation are not bound by a statement made to the mortgagor by the president of the trustee company that if new bonds were issued he would see that they were exchanged for the old ones and that the latter would be taken up and canceled, nor does such statement require them to prove that he was not authorized to act for them.

3. SAME—*when possession of bonds is not evidence of ownership.* Possession of bonds by the president of the corporation which issued them, which bonds are subsequently deposited with a bank as collateral security for his note, is not evidence of his ownership of the bonds, so as to make him a necessary party to a proceeding to foreclose a trust deed securing a prior issue.

4. PARTIES—*assignor of leasehold interest is not a necessary party to foreclosure.* The assignor of a leasehold interest in land is not a necessary party to a proceeding to foreclose a trust deed covering the leasehold estate and the building erected thereon.

5. SOLICITOR'S FEES—*it is proper to take proof of solicitor's fee in foreclosure with the other evidence in chief.* It is proper, in foreclosure, to take proof of the value of the solicitor's fee with the other evidence in chief, based upon anticipated services, since any change in such services may be met by a re-reference to the master.

6. SAME—*what a proper item to be allowed as part of solicitor's fee.* Compensation for investigating the question whether a bond issue by a corporation was *ultra vires* may be allowed as part of the solicitor's fees on foreclosure of the trust deed securing the bonds, even though the defense of *ultra vires* was not made in the answer, where defendant objected to the introduction of the deed and bonds in evidence upon that ground.

*Unity Co.* v. *Equitable Trust Co.* 107 Ill. App. 449, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

On January 25, 1890, John P. Altgeld leased from Tobias G. Richardson lots 4 and 5 in the assessor's division of original lots 3, 4 and 5, in block 37, original town of Chicago, for the term of ninety-nine years, at an annual rental of $18,000, payable quarterly. On June 25, 1890, this leasehold estate was conveyed to the Unity Company, of which John P. Altgeld was president. The Unity Company erected thereon a sixteen-story office building, known as the Unity Building. On July 1, 1891, appellant issued three hundred bonds of $1000 each, maturing July 1, 1911, to which were attached interest coupons due and payable on the first day of January, April, July and October of each year. To secure the purchasers and holders of these bonds, appellant conveyed its leasehold property and building to the Jennings Trust Company, now the Equitable Trust Company, as trustee, and covenanted that in case of default in the payment of the rent under the lease according to the terms thereof, or in case of default in the payment of interest on the bonds, continuing for thirty days, the holders of a majority of the bonds might elect to declare the principal of the bonds due. The trust deed further provided that on or before July 1 of each year, commencing in 1896, the appellant should deposit with the trustee a sufficient sum to retire twenty of these bonds, and that in case of default therein the holders of the bonds might declare them due. Appellant made default in the payment of rent on July 1, 1899, and on October 1, 1899, and failed to meet the payments of interest due October 1, 1899. Up to December 15, 1899, the date of the filing of the bill herein, it had failed to deposit any money with the trustee for the purpose of retiring the twenty bonds per year.

On January 1, 1895, the appellant issued four hundred bonds, each for $1000, similar in every respect to those issued in 1891, except their date, maturity and the time at which redemption of twenty bonds per year should commence, which was fixed at July 1, 1899. These bonds

were issued to exchange for the three hundred bonds issued in 1891, and to raise $100,000 additional to pay debts being carried by the appellant. A trust deed similar to that given in 1891 was executed to the Equitable Trust Company, as trustee, to secure this issue, and three hundred of the bonds were placed with the trustee to exchange for those outstanding. The remaining one hundred bonds were in the hands of Gov. Altgeld, as president of the Unity Company, to be sold. He first offered them to Walsh, who declined to buy. He then deposited sixty of them with the Chicago National Bank to secure his individual note for $35,000. Ten of these he afterwards withdrew, which made a total of fifty in his hands to be otherwise disposed of. Some of these he sold—how many does not appear. He paid his note of $35,000 to the Chicago National Bank and took up the fifty bonds left as collateral with that amount of money borrowed from the Illinois National Bank, and to secure his note for that amount to the latter bank he deposited with that bank sixty-four of the one hundred bonds which had been in his hands for sale. This second trust deed recites that the property is subject to the trust deed of 1891; that the Unity Company agrees that three hundred of the four hundred bonds secured by it shall be deposited with the trustee and held by it for the purpose of exchange and delivery to the holders of the three hundred bonds issued in 1891. It authorizes the trustee to make the exchange, and provides that when all of the first issue have been taken up by the trustee in exchange, they shall be canceled and the lien discharged.

Altgeld testified that John R. Walsh, president of the Equitable Trust Company, agreed with him to cancel the bonds issued in 1891 upon the delivery to the Equitable Trust Company of three hundred bonds of the issue of 1895. Walsh denies this agreement. The evidence shows that the Equitable company, at the time of this alleged agreement, owned practically none of the bonds

issued in 1891; that they had been sold by the trustee to numerous persons, and that John R. Walsh owned none of them. At the time this proceeding was commenced, the trustee had not sold, exchanged or in any way disposed of any of the bonds issued in 1895, but it still had them in its possession.

On November 15, 1899, a majority of the holders of the bonds issued in 1891, notified the trustee, in writing, of the several defaults of the appellant, expressed their election to declare the principal of the bonds due, and requested the trustee to take immediate possession of the property and proceed to foreclose the trust deed. In pursuance of these notices and requests the Equitable Trust Company, on November 23, 1899, served a written demand upon the appellant for the amount due upon its bonds. On the same date the Unity Company, by a written instrument, surrendered possession of the property to the trustee, as provided for in the trust deed, and acknowledged its inability to comply with the demand.

This bill to foreclose was filed by the Equitable Trust Company, holder of thirteen of the bonds, and the owners of the balance of the issue of 1891, against the Unity Company and the holders and owners of the additional one hundred bonds of the 1895 issue. The tenants of the building were also made defendants. Altgeld was not made a party to the proceeding. An answer was filed by the Unity Company, alleging that under an agreement with John R. Walsh, president of the Equitable Trust Company, the bonds issued in 1895 were to be exchanged and substituted for those issued in 1891; that relying on this agreement, as represented to them by Altgeld, several persons purchased bonds of the issue of 1895, and that by reason of the agreement aforesaid the bonds and trust deed of 1895 supersede and take the place of those of 1891, so that proceedings cannot be brought to foreclose the trust deed of 1891; also alleging that this proceeding is brought in violation of an agreement

not to foreclose immediately after the Equitable Trust Company took possession of the building. A replication was filed by appellees thereto, which, however, was not signed by appellees or their solicitor. No objection was made by appellant to this incomplete replication. The cause was referred to the master, who took testimony offered by each party, and upon his report being filed a hearing was had and a decree was rendered by the circuit court of Cook county, finding that the trust deed of 1891 was a prior lien to that of 1895 and ordering a sale of the property to satisfy the debt and interest, which amounted to $328,917.75, and the costs of the proceeding. It also ordered that a solicitor's fee of $7500 be allowed to complainants' solicitor for his services herein. An appeal was taken by the Unity Company only, from this decree to the Appellate Court for the First District, where the decree was affirmed, and that company now appeals from the judgment of the Appellate Court.

HENRY C. NOYES, for appellant.

AZEL F. HATCH, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this case the complainants filed to the answer of appellant a pleading in the ordinary form of a general replication, which, however, is unsigned. Appellant argues that under these circumstances the answer must be treated as true, and refers to the case of *Gruenberg* v. *Smith*, 58 Ill. App. 281. In that case a hearing was had upon bill and answer. The law is well settled that where, as here, the defendant joins in taking proof, and a hearing is had upon the pleadings and proof without objection, the defendant thereby waives the filing of any replication whatever. *Marple* v. *Scott*, 41 Ill. 50; *Durham* v. *Mulkey*, 59 id. 91; *Jones* v. *Neely*, 72 id. 449.

The decree of the court below is attacked on the ground that an arrangement was made between John

P. Altgeld, then president of appellant, and John R. Walsh, president of the Equitable Trust Company, by which three hundred bonds of the issue of 1895 were to be substituted for the bonds of 1891, to foreclose which this suit is brought. Gov. Altgeld testified that he had a conversation with John R. Walsh some time in the autumn of 1894, in which Walsh stated, in substance, that if the Unity Company would make a trust deed to the Equitable Trust Company to secure $400,000 in bonds of $1000 each and deliver them to the Equitable Trust Company, Walsh or his company would "see that the old bonds are surrendered and canceled," and that Walsh at the same time stated that he and his company controlled the old bonds, and that he would not only secure the substitution of the new bonds for the old ones, but that he would sell the additional bonds for the Unity Company, and, pending the sale, would advance the money for the additional one hundred new bonds. Walsh flatly denies that any such conversation ever took place or that any such arrangement was ever made. Whether such contract was entered into or not, it is apparent that the substitution never was made and that the old bonds never were canceled. There is no evidence in the record that at the time Altgeld says this conversation took place it was in the power of Walsh to bind the then holders of the bonds. If it be true that he stated that he controlled the bonds, such statement would not be evidence against the holders, nor would such statement made by him cast upon them the burden of showing that he was not authorized to act for them, as is insisted by counsel for appellant. This record fails to show, therefore, any satisfaction of the bonds of 1891 or any substitution of the new bonds for the old bonds, or any valid agreement made between the Unity Company and the holders of the old bonds for the surrender of the old bonds and the substitution of the new ones.

The same reasoning applies to the contention that an agreement was made between Walsh and Altgeld, whereby the trust deed was not to be foreclosed immediately after the possession of the building had been delivered to the trust company. The record discloses no evidence of any power in Walsh to make any such contract for or on behalf of the holders of the bonds of 1891.

Appellant states that John P. Altgeld was the owner of sixty-four bonds of the issue of 1895, which, at the time this suit was commenced, were held by the receiver of the Illinois National Bank as collateral security to a note of Altgeld's for the sum of $35,000. Such ownership is proven, it is said, by the undisputed fact that Altgeld had possession of these bonds at the time he delivered them as security to the bank in question. As president of the Unity Company, Altgeld originally had possession of the entire issue of bonds of 1895. Three hundred of those bonds he deposited with the trust company to be exchanged for the old bonds. He says that Walsh refused to advance the money on the remaining one hundred bonds when he was requested to do so, and that he, Altgeld, thereupon borrowed from the Chicago National Bank $35,000 and deposited sixty of these bonds as collateral security, and afterwards withdrew ten of them. The loan at the Illinois National Bank was obtained to take up this note at the Chicago National Bank, and when the note for the money so obtained for this purpose was given, sixty-four of the new bonds were deposited as collateral to Altgeld's note. We think it evident that John P. Altgeld, as the president of the Unity Company and for the Unity Company, was endeavoring to sell the additional one hundred new bonds, and, failing a sale, was engaged in borrowing money thereon for the purposes of the company. He had possession of these bonds as the officer of the company. His possession of them under the circumstances is no evidence that he owned them, and does not show that he was a necessary party

to this suit. We do not determine who is the owner of the equity in those sixty-four bonds. All we decide in reference thereto is, that there is no evidence in this record that such equity is the property of Altgeld or his estate.

The Unity Building stands on ground which was leased by John P. Altgeld from the owner thereof at an annual rental of $18,000. This leasehold interest was transferred by Altgeld to the Unity Company and is the interest covered by the trust deed of 1891. This suit is to foreclose an interest in real estate which had been conveyed by John P. Altgeld. He was the assignor of appellant, but was not on that account a necessary party to this suit. He retained no interest in the real estate, but had he done so he would not have been a necessary defendant, because the foreclosure proceedings can only affect the interest which had passed to the Unity Company, and not that which Altgeld retained; and the fact that he remained liable for the payment of the rent on the original lease, if such liability remains, in nowise alters the situation. This suit does not affect the liability of the Unity Company for the payment of rent to the owner of the fee.

A solicitor's fee of $7500 was allowed to complainants for their solicitor's fee herein, under a provision in the trust deed. This is objected to on the ground that the proof fixing the amount thereof was taken just prior to the close of the complainants' evidence in chief before the master, at a time when it was not known and could not be known what services would be rendered by complainants' solicitor, and that, therefore, no basis existed upon which any fee could be fixed. Complainants followed what we believe to be the invariable practice in foreclosure suits, which is to take the proof fixing the value of the solicitor's fee with the other evidence in chief to support the bill. In taking the proof at that time it is necessary to anticipate the work thereafter to be done by the solicitor, and it is entirely proper for the

witness on the part of the complainant to state in detail, and if he fails so to do, for the cross-examiner to ascertain exactly what services thereafter to be performed are covered by the fee fixed by the witness. After the hearing and prior to the passing of the decree, if it appear to the court that anticipated services were not rendered or that services were rendered that were not anticipated, it will be proper to again refer the matter of solicitor's compensation to the master, that he may take evidence and make a finding that will fix the fee at a proper amount. In a foreclosure suit the duty of complainant's solicitor is not ended, in case there is a sale, until he has attended upon the sale, secured the distribution of the proceeds of the sale and a decree approving the master's report of sale and striking the case from the docket. It is impossible, therefore, that the taking of the testimony to fix the value of his services should be postponed until the services are all rendered.

Among other items covered by the amount fixed for the solicitor's fee in this case was an investigation of the question of *ultra vires* in reference to the first bonds and trust deed, and as no such defense was made by answer, it is urged that compensation for that investigation should not have been included. When the trust deed which this bill was filed to foreclose and also when the bonds which it secured were offered in evidence, appellant objected because the execution of the trust deed and the bonds for the purpose for which they were executed was beyond the power of the Unity Company. We are therefore of the opinion that the service in question was properly included among those for which an allowance could rightfully be made under the trust deed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*