THE COLORADO AND SOUTHERN RAILWAY COMPANY, Respondent, *v.* DE WITT C. BLAIR et al., Copartners under the Firm Name of BLAIR & CO., Appellants, Impleaded with Others.

Railroads — trustees of mortgage securing railroad bonds have no power to change or compromise the security pending default in the bonds unless expressly given by trust mortgage — invalidity of release of mortgaged property by trustees of railroad mortgage — decree in action brought by mortgagor directing trustees to release property not effective when bondholders are not parties to the action.

1. A trustee, under a mortgage to secure the issue of bonds, may not sell, change or in any manner compromise the security except as authorized in express terms or by necessary implication, and has no power to change or compromise the security pending a default, unless such power was conferred by the instrument creating the trust, nor does such a trustee represent the *cestui que trustent* in a suit, the purpose of which is to obtain that authority.

2. The terms of two trust mortgages examined, and *held,* that they did not confer upon the trustees therein named, either expressly or

32

by necessary implication, power to release from the lien of such mortgages property covered thereby.

3. The fact that in an action brought by the mortgagor against the trustees under a railroad mortgage, to which action none of the bondholders were parties, it was adjudged that the trustees execute a release of the property subject to the lien of the mortgage, and that such trustees executed and delivered such an instrument, does not authorize a decree for specific performance against parties who had contracted to purchase the property when "free and clear from all incumbrance" created by the mortgagor.

*Colorado & Southern Ry. Co.* v. *Blair*, 163 App. Div. 698, reversed.

(Argued February 26, 1915; decided April 13, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered August 3, 1914, which reversed an interlocutory judgment of Special Term sustaining a demurrer to the complaint and overruled such demurrer.

The following question was certified: "Does the complaint state facts sufficient to constitute a cause of action ?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*F. W. M. Cutcheon*, *William R. Begg* and *Harrison Tweed* for appellants. To state a cause of action on the contract here involved the complaint must show that the certificate of beneficial interest was tendered by plaintiff to defendants already absolutely released from the liens of plaintiff's mortgages by proceedings effectual in law and equity to accomplish such release, that such tender was kept good and that at the time of the commencement of the action plaintiff was ready and able to perform. (*Hinckley* v. *Smith*, 51 N. Y. 21; *Tipton* v. *Feitner*, 20 N. Y. 423; *Pope* v. *Car Company*, 107 N. Y. 61; *Ziehen* v. *Smith*, 148 N. Y. 558; *Eddy* v. *Davis*, 116 N. Y. 247; *Burling* v. *King*, 66 Barb. 633; *Kuntz* v. *Schnugg*, 99 App. Div. 191.) The complaint shows that plaintiff has not tendered the certificate absolutely released from its

mortgages, has not kept such tender good, and was not at the commencement of this action ready and able to perform. (*Hinckley* v. *Smith*, 51 N. Y. 21; *Burling* v. *King*, 66 Barb. 633; *Clay* v. *Mayer*, 183 Mo. 150; *Florence, etc., Power Co.* v. *Hanby*, 101 Ala. 15; *Clark* v. *Jackson*, 222 Ill. 13; *Porter* v. *Atherton*, 32 Cal. 416, 423; *O'Brien* v. *Fitzgerald*, 143 N. Y. 377; *Sherman* v. *Foster*, 158 N. Y. 587; *Eddy* v. *Davis*, 116 N. Y. 247; *Kuntz* v. *Schnugg*, 99 App. Div. 191.) Plaintiff's mortgages do not give the trustees thereunder power to release the certificate from the lien of the mortgages. (*Hollister* v. *Stewart*, 111 N. Y. 644; *Miller* v. *Rutland, etc., R. R. Co.*, 36 Vt. 452; *Fidelity Ins. Co.* v. *R. R. Co.*, 36 N. J. Eq. 405; *Fidelity Co.* v. *R. R. Co.*, 32 W. Va. 244; *Weir* v. *Iron Springs Co.*, 27 Col. 385; 4 Cook on Corp. [7th ed.] 3056, § 816; Short on Railway Bonds & Mortgages, 297, § 274; *D. & H. C. Co.* v. *Pa. Coal Co.*, 50 N. Y. 250; *Smith* v. *Savings Bank*, 101 N. Y. 58.) The trustees did not have power as against the bondholders to sell the certificate in the absence of default, even with the consent of plaintiff. (1 Cook on Corp. [7th ed.] 981, § 323; 2 Perry on Trusts, 1264, § 764; 3 Pom. Eq. Juris. 2055, § 1067; 4 Thomp. on Corp. 595, § 4039; *First Nat. Bank* v. *Broadway Bank*, 156 N. Y. 459; *Gerard* v. *McCormick*, 130 N. Y. 261; *Zimmerman* v. *Kinkle*, 108 N. Y. 282; *Wetmore* v. *Porter*, 93 N. Y. 76; *Fellows* v. *Longyor*, 91 N. Y. 324; *Budd* v. *Manroe*, 18 Hun, 316; *Duncan* v. *Jaudon*, 15 Wall. 165; *Geyser Marion Gold Mining Co.* v. *Stark*, 106 Fed. Rep. 558; *Shaw* v. *Spencer*, 100 Mass. 382; *Bremer* v. *Hadley*, 196 Mass. 217; *Gaston* v. *Bank*, 29 N. J. Eq. 98; *Bayard* v. *Bank*, 52 Penn. St. 232; *Clemens* v. *Heckscher*, 185 Penn. St. 476; *Davis* v. *Bank*, 23 R. I. 243; *Goad* v. *Montgomery*, 119 Cal. 552.) The judgment entered in the former suit is ineffectual, as against the holders of bonds issued under the mortgages, to authorize the sale of the certificate or the release thereof from the

lien of the mortgages. (*Land Co.* v. *Peck*, 112 Ill. 408; *Fidelity Co.* v. *Railroad Co.*, 32 W. Va. 244; *First Nat. Bank* v. *Broadway Bank*, 156 N. Y. 459; *Gerard* v. *McCormick*, 130 N. Y. 261; *Zimmerman* v. *Kinkle*, 108 N. Y. 282; *O'Beirne* v. *R. R. Co.*, 151 N. Y. 372; *Holly* v. *Gibbons*, 176 N. Y. 520; *Browne* v. *Blount*, 2 Russ. & Myl. 83; *Russell* v. *Clarke*, 7 Cranch, 69; *Mallow* v. *Hinde*, 12 Wheat. 193; *Shields* v. *Barrow*, 17 How. [U. S.] 129; *Coiron* v. *Millaudon*, 19 How. [U. S.] 113; *Ribon* v. *Railroad Co.*, 16 Wall. 446; *Chadbourne* v. *Coe*, 51 Fed. Rep. 479.) The trustees in the mortgages did not represent in the former suit holders of bonds issued under the mortgages. Therefore, the holders of the bonds were not concluded by the judgment therein. (*Holland* v. *Baker*, 3 Hare, 68; *Coe* v. *Beckwith*, 31 Barb. 339; *Matter of Aldrich Will*, 81 Vt. 308; Story Equity Pleadings [10th ed.], 114, § 106; 2 Perry on Trusts [6th ed.], 1508, § 928; *Kettleby* v. *Lamb*, 2 Ch. Rep. 404; *Diggs* v. *Trust Co.*, 112 Md. 50; *Orrick* v. *Trust Co.*, 113 Md. 239.) Whatever may be the powers of trustees of other classes of instruments to represent the beneficiaries thereof in litigation, it is clearly established that the trustees of the mortgages involved in this case could not and did not in the former suit represent the holders of the bonds issued under those mortgages, and that the holders of the bonds are not concluded by the judgment in the former suit. (*Hollister* v. *Stewart*, 111 N. Y. 644; *Clark* v. *Railroad Co.*, 58 How. Pr. 21; *Weetjen* v. *Railroad Co.*, 4 Hun, 529; *Fidelity Ins. Co.* v. *Railroad Co.*, 36 N. J. Eq. 405; *Welheimer* v. *Consol. Tobacco Co.*, 59 Atl. Rep. 363; *Miller* v. *Railroad Co.*, 36 Vt. 452; *Nat. Salt Co.* v. *Ingraham*, 143 Fed. Rep. 805; *Mackay* v. *Coal Co.*, 178 Fed. Rep. 881; *Appeal of Harrisburg, etc., R. R. Co.*, 15 Atl. Rep. 459; *Barbour* v. *Mortgage Co.*, 102 Ill. 121; *Clark* v. *Manning*, 4 Ill. App. 649; 95 Ill. 580; *Belknap Sav. Bank* v. *Land Co.*, 28 Col. 326; *First Nat. Bank* v. *Miner*, 9

Col. App. 361; *Welsh* v. *Railroad Co.*, 25 Minn. 314.) In the former suit one beneficiary (plaintiff) sought to enforce certain asserted rights in the trust in hostility to the other beneficiaries (the bondholders). In such case the trustee cannot represent the beneficiaries in hostility to whom the claim is asserted. (*Ashuelot Railroad Co.* v. *Elliott*, 57 N. H. 397; 58 N. H. 451; *Washington, etc., R. R.* v. *Alexandria, etc., R. R.*, 19 Grat. 592; *Williamson* v. *Stone*, 128 Ill. 129; *Chas. Green Real Estate Co.* v. *Mutual Housebuilding Co.*, 196 Mo. 669; *Hartman* v. *Evans*, 38 W. Va. 358; *Matter of Straut*, 126 N. Y. 201; *Rogers* v. *Rogers*, 3 Paige, 379; *Vetterlein* v. *Barnes*, 124 U. S. 169; *Ryan* v. *Seaboard & Roanoke R. R. Co.*, 89 Fed. Rep. 397; *Gordon* v. *Green*, 113 Mass. 259; *Northampton Nat. Bank* v. *Crafts*, 145 Mass. 444; *Sears* v. *Hardy*, 120 Mass. 524; *Tyson* v. *Applegate*, 40 N. J. Eq. 305; *Brokaw* v. *Brokaw's Exrs.*, 41 N. J. Eq. 215.) The complaint fails to show that plaintiff is entitled to specific performance, which is the only relief asked. (*O'Brien* v. *Fitzgerald*, 143 N. Y. 377; *Black* v. *Vanderbilt*, 70 App. Div. 16; *Perrin* v. *Smith*, 135 App. Div. 127; *Bateman* v. *Straus*, 86 App. Div. 540; *Kelsey* v. *Distler*, 133 App. Div. 916; *Kienle* v. *Realty Company*, 133 App. Div. 391; *Express Co.* v. *R. R. Co.*, 99 U. S. 191; *Wilcox* v. *Williams*, 92 Hun, 250; *Watford O. & Gas Co.* v. *Shipman*, 233 Ill. 9; *Fowler Utilities Co.* v. *Gray*, 168 Ind. 1.)

*A. C. Rearick, G. H. Dorr* and *Francis S. Philbrick* for respondent. Apart from any express provisions of the mortgages, under the circumstances of the present case, where a change in the character of the trust *res* was necessary for the preservation of the trust fund, the trustees had the right, and were under the duty, to release the certificate; and the Supreme Court had, and in the prior suits properly exerted, the power always possessed and freely exercised by courts of equity, even in contra-

vention of express provisions in the trust instrument, to order a change of investment manifestly necessary, in an emergency, for the preservation of the trust estate. (Perry on Trusts [6th ed.], §§ 459, 464–466, 509; *Matter of Olmstead,* 52 App. Div. 515; 164 N. Y. 571; *Lansing* v. *Lansing,* 45 Barb. 182; *Clark* v. *Clark,* 23 Misc. Rep. 272; *Jackson* v. *Westerfield,* 61 How. Pr. 399; *Matter of Hall,* 164 N. Y. 196; *McIntyre* v. *Zanesville,* 17 Ohio St. 352; *Perry* v. *Smoot,* 23 Grat. 241; *Citizens' Bank* v. *Jefferson,* 88 Ky. 651, 656; *Matter of Hall,* 164 N. Y. 196; *Gray* v. *Fox,* 1 N. J. Eq. 259; *Washington* v. *Emery,* 57 N. C. 32; *Matter of Walker,* 59 L. J. Ch. 386.) The Supreme Court, in passing its decree directing the trustees to release the trust certificate from the liens of the mortgages, necessarily passed both on the necessity of acting for the preservation of the trust estate and on the sufficiency of the trustees' capacity to represent the bondholders. That decree, standing unreversed, afforded and affords complete protection to the defendants, acting in reliance upon it, even though this court, if it were possible now to reconsider the propositions there involved as original questions, might come to different conclusions. (Code Civ. Pro. § 452; *Osterhoudt* v. *Board,* 98 N. Y. 239; *Steinbach* v. *Ins. Co.,* 172 N. Y. 471; *Cook* v. *Lake,* 50 App. Div. 92; *Donovan* v. *Twist,* 105 App. Div. 171; *People* v. *McClellan,* 119 App. Div. 416; *Knopf* v. *Board,* 173 Ill. 196; *Sears* v. *Hardy,* 120 Mass. 524; *Park Hill Co.* v. *Herriot,* 41 App. Div. 324; *Livingston* v. *Livingston,* 56 App. Div. 484; 166 N. Y. 601; *Thaxter* v. *Thain,* 100 App. Div. 488; *Fink* v. *B. S. Terminal Co.,* 144 Fed. Rep. 837.) Notwithstanding the " general rule " requiring the joinder in chancery suits of all persons interested in the subject-matter thereof, the court has always freely exercised a discretionary power to dispense with the actual joinder even of parties usually termed necessary or indispensable, whenever such joinder was impracticable or would hinder or delay litigation, provided it could

deem their interests to be so represented by parties actually before the court as to insure proper protection thereof. (*Williams* v. *Bankhead*, 19 Wall. 563; *Russell* v. *Clarke*, 7 Cranch, 69; *Story* v. *Livingston*, 13 Pet. 359; *Shields* v. *Barrow*, 17 How. [U. S.] 130; *Barney* v. *Baltimore City*, 6 Wall. 280; *McArthur* v. *Scott*, 113 U. S. 340; *Landon* v. *Townshend*, 112 N. Y. 93.) In suits affecting trust estates the capacity of the trustee to represent the interests of his beneficiaries is generally recognized, and invariably so when the beneficiaries are numerous, as in the case of corporate mortgages in trust to secure bond issues, the only limitation in that case upon his representative capacity being that he be loyal and disinterested. (1 Morawetz on Corp., § 239; Thompson on Corp. [1st ed.] §§ 6209, 6210; 3 Thompson on Corp. [2d ed.] § 2593; 3 Cook on Corp. [6th ed.] § 817; Wiltsie on Mort. Fore. [3d. ed.] §§ 131, 132; *Va. Pass. & Power Co.* v. *Fisher*, 104 Va. 121, 133; *Com.* v. *Susquehanna R. Co.*, 122 Penn. St. 306; *Alexander* v. *Cana*, 1 De G. & Sm. 415; *Stevens* v. *Stevens*, 69 Hun, 332; 139 Y. N. 610; *Bifield* v. *Taylor*, 1 Beatty, 91; *Bracken* v. *Atlantic Trust Company*, 36 App. Div. 67; *Corcoran* v. *Ches. & O. Canal Co.*, 94 U. S. 741; *O'Beirne* v. *Allegheny R. Co.*, 151 N. Y. 372; *Wood* v. *Rowcliff*, 3 Hare, 304; *Abell* v. *Brown*, 55 Md. 217; *Smith* v. *Portland*, 30 Fed. Rep. 734; *Brown* v. *Cherry*, 56 Barb. 635; *Tyler* v. *Houghton*, 25 Cal. 27; *Bartlett* v. *Hatch*, 17 Abb. Pr. 461.) The capacity of the trustee to represent his *cestuis que trust* is wholly independent of the question whether or not the suit be in recognition of, or in furtherance of, or adverse to, or an attack upon the validity of, the trust; and it is immaterial whether any adverse claim to the trust *res* be in date antecedent or subsequent to the time of creation of the trust. (*Hunt* v. *Weiner*, 39 Ark. 70; *Sears* v. *Hardy*, 120 Mass. 524; *Stevenson* v. *Austin*, 44 Mass. 474; *Toler* v. *E. Tenn. R. Co.*, 67 Fed. Rep. 168; *Gordon* v. *Green*, 113 Mass. 259; *Payne* v. *Parker*,

L. R. [1 Ch. App.] 327; *Hays* v. *Coal Co.*, 29 Ohio
St. 330; *Bartlett* v. *Hatch*, 17 Abb. Pr. 461; *Matter of
Straut*, 126 N. Y. 201; *Hubbard* v. *Eames*, 22 Barb. 597.)
Whenever a trustee is present in court competent, under
the principles we have developed, to serve as the repre-
sentative of numerous *cestuis* in any suit involving their
common interests, there is absolutely no authority, either
in decisions or dicta, for the proposition that some of the
*cestuis* must be joined with their trustee in order to
make the decree binding upon all the *cestuis*. (*Coann*
v. *Atlanta Co.*, 14 Fed. Rep. 4; *Campbell* v. *Tex. R.
Co.*, 1 Woods, 368; *Chicago Land Co.* v. *Peck*, 112
Ill. 408; *Coe* v. *Columbus R. Co.*, 10 Ohio St. 372; *Rum-
sey* v. *Peoples Ry. Co.*, 154 Mo. 215; *Railroad Co.* v.
*Howard*, 7 Wall. 392; *Farmers L. & T. Co.* v. *No. Pac.
R. Co.*, 70 Fed. Rep. 423; *Cholmondeley* v. *Clinton*, 2
Jac. & W. 1; *McArthur* v. *Scott*, 113 U. S. 340; *Hall* v.
*Sullivan R. Co.*, Fed. Cas. No. 5,948; *Peacock* v. *Monk*,
1 Ves. Sr. 127; *Wilmer* v. *Airline*, Fed. Cas. No. 17,776,
82; *First Nat. Fire Ins. Co.* v. *Salisbury*, 130 Mass. 303.)
As in the case of any other trustee for numerous bene-
ficiaries the representative capacity of the trustee of a
corporate mortgage, like his powers as trustee for the
realization of the trust defined by the trust deed, depends,
not upon any contract of agency express or implied or
upon express powers conferred in the trust deed, but
solely upon the question whether the intimacy of his rela-
tion to the trust property is such as to assure the court in
its discretion that the beneficiaries' interests will be ade-
quately presented and defended. (*Anonymous*, 1 Vern.
261; *Malin* v. *Malin*, 2 Johns. Ch. 238; *S. C. Co.* v.
*Blatchford*, 11 Wall. 172; *Pierce* v. *Emery*, 32 N. H.
484; *N. W. Co.* v. *Kansas City*, 78 Fed. Rep. 428; *Bd.
of Super.* v. *M. P. R. Co.*, 24 Wis. 93; *Van Vechten* v.
*Terry*, 2 Johns. Ch. 197; *Tyson* v. *Applegate*, 40 N. Y.
305; *Willink* v. *Canal Co.*, 4 N. J. Eq. 377; *Thomp-
son* v. *Remsen*, 27 Misc. Rep. 279.) The judgment

of the Supreme Court in the prior suit which directed the release of the Midland stock interest correctly applied, both in the matter of the trustees' powers and duties under judicial direction and in the matter of parties, principles laid down in practically identical cases in other jurisdictions. (*Mayor of Baltimore* v. *Union Rys. Co.,* 108 Md. 64; *Leviness* v. *Con. Gas Co.,* 114 Md. 559.)

MILLER, J. This is an action for the specific performance of an agreement of purchase and sale of a so-called beneficial interest in one-half of the common and preferred stock of the Colorado Midland Railway Company owned by the plaintiff. Said interest was pledged by the plaintiff to the Central Trust Company, then trustee under a first mortgage, to secure an issue of bonds of which $19,402,000 have been issued and are outstanding. Subsequently it was assigned, subject to said prior mortgage, to said trust company as trustee under a refunding and extension mortgage, under which bonds to the amount of $30,803,900 are outstanding. The agreement of purchase and sale provided for the delivery to the defendants of said beneficial interest certificate upon its release "from the lien of said mortgages, by proceedings effectual in law and equity to accomplish such release, so that said certificate and all of the rights evidenced thereby shall be free and clear of all incumbrance created or suffered by the Colorado & Southern Railway Company." After the agreement was made the plaintiff requested the trustees, one having been substituted under the first mortgage, to release the certificate, and upon their refusal brought an action in the Supreme Court to compel them to do so. The complaint in that action set forth the facts with respect to the plaintiff's ownership of said beneficial interest, its pledge as security under the two mortgages or trust deeds, the agreement of purchase and sale, the demand upon the trustees and their refusal to release, the condition of the

Colorado Midland Railway Company showing that it was in the interest of the trust estate, and even necessary to prevent loss, to make the sale.   It alleged with respect to both mortgages that by the acceptance of the trust the trustee " assumed toward the plaintiff, and all other persons interested in the trust, the duty of conserving the trust estate thereby vested in said trust company and of exercising at all times a sound discretion to prevent avoidable waste and dissipation thereof," and that the defendants were bound " in law and equity, to comply with said requests and to release and surrender said beneficial interest certificate," but that they had refused to do so " upon the ground, as stated by said defendants, respectively, that neither the first mortgage nor the refunding and extension mortgage confers or recognizes any right or discretion in the trustees thereunder respectively, to release or to surrender or to permit to be surrendered any stocks or evidences of interest in stocks subject to the lien of said mortgages and that they are respectively entitled to the judgment of a court of competent jurisdiction in the premises:" The prayer for relief was that upon the payment to it of the purchase price the substituted trustee under the first mortgage release said certificate from the lien of the mortgage and that the trustee under the refunding mortgage execute a like release upon the delivery to it of an assignment of the plaintiff's equity in said purchase price.   The issues joined by the answers of the defendants in that action were referred to a referee who found the facts substantially as alleged and as conclusions of law among other things " that the requests made by the plaintiff for the release of said beneficial interest certificate from the liens of said respective mortgages were duly made in accordance with the terms and provisions of said respective mortgages with respect· to the release of property therefrom.   That the release of said beneficial interest certificate from the liens of said first mortgage and said refunding and extension mort-

·gage will be beneficial to, and is necessary for the proper preservation of, the trust estates thereunder respectively and to prevent waste thereof and is desirable and essential for the protection and security of the holders of the first mortgage bonds and of the refunding and extension mortgage bonds of the plaintiff by said mortgages respectively secured." There was no prayer in the complaint for a construction of the mortgages or trust deeds, and the referee did not find as a conclusion of law that the trustees were authorized by the terms thereof to release said security. The judgment did not purport to construe the said instruments, but merely directed the trustees to give the releases in accordance with the prayer of the complaint. None of the bondholders were made parties to that suit, although some of the bonds under both mortgages were registered.

The important question in the case is whether the title tendered by the plaintiff is sufficient; and that depends on two questions: 1. Whether the trustees had authority to release said security. 2. Whether the trustees represented the bondholders, so that the latter were bound by the judgment in the prior suit.

The view expressly rejected by the trial court, and tacitly at least by the Appellate Division, that the trustees were authorized by the terms of the trust instrument to release said security, is earnestly pressed upon us. The most, however, claimed for the refunding mortgage is that its release provision is ambiguous and possibly suggests an inadvertent omission, but it is urged that that mortgage, being subject to the first, is also subject to the right of the trustee under the first mortgage to release the security. Without assenting in any way to that proposition, we may examine the terms of the first mortgage as being most favorable to the view which we are asked to take.

The first mortgage provided: " Whenever there shall be furnished to the trustee a written request of the mort-

gagor, with a copy of a resolution of its board of directors·
approving such request, the trustee, from time to time,
shall release from the lien and operation of this indenture,
to persons designated by the mortgagor, any portion of
the mortgaged premises appurtenant to any line of rail-
road subject to the lien hereof, or acquired or held, by
the mortgagor for any purpose incidental to the operation
thereon, which, in the judgment of the mortgagor, shall,
at the time of such release, be no longer requisite for use
for the purposes for which the same shall have been so
acquired or used, or necessary or expedient to be retained
for use in connection with the mortgaged premises, and
likewise any parts of the tracks, sidings or roadway,
which may have been thrown out of use and ceased to
form part of the railroads operated by the mortgagor at
the time of such release by reason of straightening or
alteration of the line of road or other satisfactory cause."
It is said that "mortgaged premises" are defined in
another part of the instrument to mean "all and singular
the premises and property hereby conveyed or intended so
to be." The latter expression was used in a clause author-
izing a receiver, upon being appointed on a default, to
enter upon the mortgaged premises and operate the same
pending a sale. One would hardly think of including
stock within the term "mortgaged premises," and the
context plainly shows that the draftsman of the release
clause quoted had in mind physical property only. But,
if there could otherwise be any doubt about that, it
will be removed by the following provision expressly
defining the authority of the trustee with respect to
stock, viz.: "The trustee may also exercise, in its discre-
tion, in respect of any stock which may at any time be held
by it under the provisions of this indenture, all rights
of holders thereof, and may assent to any corporate act
on the part of any company, stock of which it may so
hold, and may at any time do what may be necessary for
the purpose of maintaining or preserving the corporate

existence of any such company, and may qualify persons to be chosen as directors thereof." The context here plainly shows that the phrase "rights of holders" was intended to mean rights of the kind enumerated, not the right to sell or release. The instrument contained express provisions for the sale and release of a line of railroad from Cheyenne to Orin Junction with its branches and appurtenances, of the mortgagor's lines of telegraph or any part thereof, of machinery, equipment, implements, furniture, materials and supplies, which may have become unfit or undesirable for use, and for the cancellation, alteration or substitution of leases, operating, traffic or other contracts or trackage rights. The only other provision for a sale of the mortgaged property was that for a sale by the trustee on a default, which was to be at public auction after giving specified notice thereof.

The beneficial interest certificate was acquired after the first mortgage was given, so of course it was not therein expressly provided for; although as already noted that instrument did contemplate that stock might be held under it. Said certificate was but the evidence of a stock interest, which was acquired before, and was expressly included in, the refunding mortgage. The provisions of that instrument are, therefore, important on the question of implied authority to release said security. The trustee was given authority upon prescribed conditions to release " any part of the mortgaged railways and lands," and it was expressly provided that "the personal property and chattels conveyed  *  *  *  'other than stocks, bonds and other securities and claims shall be real estate for all the purposes of this indenture." Article 5 defines in great detail the powers of the trustee with respect to stocks and bonds pledged. It was empowered among other things to have bonds registered in its name and certificates of stock transferred into its name, to assign and transfer shares of stock to qualify

directors, with the proviso that the control of any corporation should not thus be lost, to take certain measures in case of a default in the payment of principal or interest of any of the bonds or in case of the dissolution or liquidation of any corporation whose stock was subject to the indenture, to make any exchange, substitution or surrender of securities required by a merger or consolidation or a sale of the property of one corporation to another, provided that the stock of the company substituted should bear to its total capital stock a relation as high (never less than a majority) as that borne by the pledged stock surrendered to the aggregate capital stock of the constituent or selling companies. The only power of sale given was upon default and then at public auction after notice published. It expressly included bonds and stocks. Without going more minutely into its provisions, it suffices to say that the redemption mortgage or trust deed not only does not in express terms authorize the trustee to sell or release stocks pledged, except as aforesaid, but by the elaborateness of detail in which the trust powers are defined and possible contingencies are provided for, it plainly negatives the intention to confer any such authority by implication. If the trustee was to have the broad implied power in its discretion to sell or release the mortgaged property, it was a useless effort to define with such care the conditions and safeguards under which it might release portions of the physical property or the extent to which it might deal with the pledged securities.

It is suggested that the power to sell to prevent waste is incidental to the office of trustee. No doubt such incidental powers as the trustee must possess to exercise the powers expressly conferred will be implied. But it adds nothing to an implied power to call it incidental. The trustee's duties under instruments like those in suit are before default mainly passive. It holds the legal title of the securities pledged as trustee for the bondholders.

But the mortgagor for the most part retains control and management of the mortgaged property. The mortgagor was entitled to the interest on all bonds and the dividends on all stock pledged. The trustee was a mere custodian and had no active duties except as specified. It is proposed in this case to sell for $150,000 a security for which the mortgagor paid $1,021,557.50. We must assume on this appeal that it is for the interest of the bondholders to make the sale. But if the trustee has discretion to change or compromise the security held by it, it may exercise that discretion unwisely and improvidently and the bondholders will have no recourse except to it. The vast sums invested in railroad bonds presumably on the faith of the security pledged would be subject to an unknown risk if a mortgage trustee could sell, change or in any manner compromise the security except as authorized in express terms or by necessary implication.

It seems unnecessary to argue or cite authority in support of the plain and obvious proposition that we must look to the trust instrument for the authority of the trustee. And yet the argument is pressed that the power to sell to prevent waste exists independently of the trust instrument. None of the numerous cases cited seem to us to support that proposition. Of course, in examining them the nature of the particular trust duties and powers involved must be kept in mind. A power to sell might arise by implication in one case and not in another. In this case the power to sell before default was not incidental, or necessary, to any power expressly conferred. It is suggested that the power to sell after default might with the consent of the mortgagor be exercised before default. It is a sufficient answer that the trustee was authorized to sell only at public auction after notice published. It is also suggested that the power to sell is to be implied from the very nature of a railroad mortgage with its long term and scattered bondholders. But the power to sell is not incidental to and cannot be implied

from the power to hold the pledged security, certainly
not when the power to deal with it before a default is
carefully defined.   If it had been intended to confer such
a power on the trustee, it would have been easy to do so.
We think it plain that a trustee in such a case as this
has no power to change or compromise the security pend-
ing a default, unless such power was conferred by the
instrument creating the trust.   (*Clark* v. *St. Louis,
Alton & Terre Haute R. R. Co.*, 58 How. Pr. 21; *Hol-
lister* v. *Stewart*, 111 N. Y. 644; *Chester* v. *Jumel*, 125
N. Y. 237, 253; *Fidelity Insurance, Trust & Safe
Deposit Co.* v. *United New Jersey R. R. & Canal
Co.*, 36 N. J. Eq. 405; *Bremer* v. *Hadley*, 196 Mass.
217; *Unity Co.* v. *Eq. Trust Co.*, 204 Ill. 595; *Goad* v.
*Montgomery*, 119 Cal. 552.).

We come now to the question on which the learned
Appellate Division decided the case.   We may assume
that a court of equity under its general supervisory power
over trusts may in the interest of all parties direct a sale
of the trust property, though not authorized by the instru-
ment creating the trust.   (See *Matter of New*, L. R.
1901 [2 Ch.] 534.)   That that was the theory of the suit
by the plaintiff against the trustees is made plain by the
averments of the complaint in that action to which I have
already referred.   Facts were pleaded to justify the exer-
cise of that extraordinary jurisdiction and there was no
suggestion that the plaintiff desired a construction of the
trust instrument or that any of the provisions required
construction, but on the contrary it was alleged that the
trustees had refused to release the security on the ground
that the trust instruments did not authorize them to do
so and that they were entitled to the judgment of a court
of competent jurisdiction, and there was no suggestion
that that ground was not well taken.   Whilst there may
be isolated sentences upon which it is possible to base an
argument that the suit was for the construction of the
trust instrument or to require the trustees to act in

accordance with its terms, the truth is, as is virtually
admitted in the respondent's brief, that that suit was an
appeal to the extraordinary jurisdiction of equity to direct
a disposition of the trust property not authorized by the
instruments creating the trust.

All of the reasons against allowing a trustee discretion
to exercise authority not conferred upon it are equally
cogent against allowing it to represent the *cestuis que
trustent* in a suit whose purpose is to obtain that authority.
(See *Clark* v. *St. Louis, Alton & Terre Haute R. R. Co.,
supra; Fidelity Insurance, Trust & Safe Deposit Co.*
v. *United New Jersey R. R. & Canal Co., supra.*)   In an
action to foreclose the mortgage (*Shaw* v. *Norfolk County
R. R. Co.,* 5 Gray, 162; *Kneeland* v. *Luce,* 141 U. S.
491; *Bockes* v. *Hathorn,* 78 N. Y. 222), or in one to fore-
close a prior mortgage (*Wallace* v. *Loomis,* 97 U. S. 146),
or in one to declare void the trust (*Kerrison* v. *Stewart,*
93 U. S. 155; *Beals* v. *Ill., Mo. & Texas R. R. Co.,* 133
U. S. 290), or to state the proposition generally in defend-
ing or executing the trust, the trustee represents the
bondholders, who, though their rights are directly
affected, are individually not necessary parties.   And so
executors, administrators, assignees, receivers and trus-
tees, being invested with the legal title and the authority
to represent the beneficial owners, are generally the proper
and necessary parties in actions by or against strangers
affecting the trust property and not involving any ques-
tion between the trustee and the beneficiaries. (See
*Wiser* v. *Blachly,* 1 Johns. Ch. 437; *Matter of Straut,*
126 N. Y. 201; *Carey* v. *Brown,* 92 U. S. 171; *McArthur*
v. *Scott,* 113 U. S. 340.)   But that is because the trustee
has authority to represent the beneficiaries in the matters
involved (See *Shaw* v. *Norfolk County R. Co., supra;
Kerrison* v. *Stewart, supra; Vetterlein* v. *Barnes,* 124
U. S. 169), and the limit of the trustee's authority to act
necessarily limits its authority to represent others.

The judgment in the prior suit directed a disposition of

33

the security not authorized by the mortgages or trust deeds and to that extent modified those instruments, thus directly affecting the rights of the bondholders. That they were necessary parties either individually or by representation is too plain for argument. (But see *Landon* v. *Townshend*, 112 N. Y. 93; *Ribon* v. *Chicago, Rock Island & Pacific R. R. Co.*, 16 Wall. [U. S.] 446; *Gregory* v. *Stetson*, 133 U. S. 579.) A trustee having no authority to consent to a modification of the instrument creating the trust certainly has no implied authority to represent the *cestuis que trustent* in a suit for that purpose, and there is not a word in the instruments in question expressly conferring such authority.

We have been burdened by a wealth of citations, doubtless considered relevant, which it is impossible to discuss within the reasonable limits of an opinion. Suffice it to say, that after an exhaustive examination of the cases, none has been found which actually decided the proposition contended for by the respondent. The case evidently thought to be nearest in point is *Mayor of Baltimore* v. *United Railways & El. Co.* (108 Md. 64). That case involved two mortgages. The first contained a clause authorizing the release of the security. That clause was omitted from the second by mistake, and in essence the original suit was one to reform the written instrument and to compel the execution of the trust according to the intentions of the parties though reformation was not specifically decreed. Moreover the second mortgage was thought to be subject to the release clause of the first. It was thus a typical case for the trustee to represent the bondholders. In reading the cases the distinction must be kept in mind between trustees with broad power to administer a trust fund and trustees with limited and carefully defined powers like those in the case at bar.

The fact that the bondholders are numerous and unknown is thought to present a reason for allowing the trustee to represent them, and there are dicta which

seem to support that view, but in truth the reason why the courts proceed in such cases, in the absence of some whose rights may be directly affected, is one of necessity and does not rest on the true doctrine of representation. (*Powell* v. *Wright*, 7 Beav. 444; *Kent* v. *Church of St. Michael*, 136 N. Y. 10; *Tonnele* v. *Wetmore*, 195 N. Y. 436; *Miller* v. *Texas & Pacific Ry. Co.*, 132 U. S. 662.) In such cases those present of the class too numerous for all to be made parties or having the same interests as those not *in esse* do not in truth represent the absent, but the court proceeds *ex necessitate* on the theory that enough are present to protect the interests of the absent, and it seems that "where a suit is brought by or against a few individuals as representing a numerous class, that fact must be alleged of record, so as to present to the court the question whether sufficient parties are before it to properly represent the rights of all." (*McArthur* v. *Scott, supra.*) A trustee, however, is a true representative, but only within the limits of its authority. If upon proper allegations some of the bondholders had been made parties in the prior suit, it would doubtless have been within the discretion of the court to proceed without the presence of the others. But no such question was presented by the pleadings in that suit and the judgment was rendered on the theory that the trustees in fact represented the bondholders. It was, therefore, not binding on them unless authority had been conferred on the trustees to represent them in such a suit. The practical impossibility of making all the bondholders parties furnishes a reason, not for allowing an unauthorized person to represent them, but for providing in the instrument creating the trust, as would be easy if intended, for representation in such cases, either by the trustee, by a stated number or proportion of bondholders, or otherwise.

It is urged that the cases involving receivers' certificates are analogous. The subordination of the bonds to such certificates merely allows priority to the expenses of

the receiver in preserving and managing the property. Of course, in such matters the trustee represents the bondholders because it is in fact authorized to do so.

Bondholders invest their money on the faith of the pledged security and unless the mortgage or trust deed authorizes a change or substitution they have a right to rely upon that particular security. It would substitute a new contract to allow a trustee without authority either to compromise the security or to represent the bondholders in a suit, whose effect is to modify the contract. The bondholders themselves have a right to be heard in such a suit and no one not authorized to do so can represent them. If some of them, enough to satisfy the court that the interests of all are protected, are made parties, the presence of all may be dispensed with under the rule of necessity above stated; but it would be just as dangerous to allow a trustee without authority to represent the bondholders in such a suit as to give it a discretion not conferred by the trust instrument to compromise the security. If the trustee favored the proposed change, the sort of formal defense it might interpose may easily be imagined. In this case, whilst the answers in the former suit did allege that the mortgages or trust deeds gave the trustees no authority or discretion to sell or release the security, the necessity or propriety of making the bondholders parties was not suggested. There seems to be a too prevalent notion that a judgment of a court protects those acting under it, and too often the courts grant decrees on mere formal proofs. Instead of actually seeking instruction, trustees are too frequently looking only for protection. It needs to be better understood that judgments only bind the parties and their privies, and that, when it is sought to bind persons not made parties individually, that fact and the necessity should be made plain to the end that the court may determine whether sufficient parties are before it and may take proper care of the rights of the absent.

The order of the Appellate Division should be reversed, and the judgment of the Special Term affirmed, with costs in the Appellate Division and in this court. Question certified answered in the negative.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN and CARDOZO, JJ., concur; CHASE, J., not sitting; SEABURY, J., absent.

Order reversed, etc.