## In re ALLIED OWNERS' CORPORATION.
### No. 204.

Circuit Court of Appeals, Second Circuit.
Dec. 10, 1934.

Newman & Bisco, of New York City (Hastings S. Morse, Dan Gordon Judge, and Harry Heller, all of New York City, of counsel), for appellant Manufacturers' Trust Co.

Powell & Ruch, of New York City (Clinton J. Ruch, of New York City, of counsel), for appellees Charles H. Kelby and Clifford S. Kelsey.

Robert P. Levis, of New York City, for Allied Owners' Corporation.

Goldwater & Flynn, of New York City (Monroe Goldwater and Nathan Goldstein, both of New York City, of counsel), for ap-

202

pellees trustees of Allied Owners' Corporation.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (William T. Caldwell, of New York City, of counsel), for appellee debenture holders' committee.

Sullivan & Cromwell, of New York City (Paul W. McQuillen, of New York City, of counsel), for Ernest W. Niver and others.

Archibald Palmer, of New York City (Archibald Palmer and Harry D. Glicksman, both of New York City, of counsel), for intervening bondholders Emanuel M. Cohan, Max Lober, and Irving Kuller.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The debtor, Allied Owners' Corporation, began a proceeding for a reorganization under section 77B of the Bankruptcy Act (11 USCA § 207). The Manufacturers' Trust Company was named as trustee in an indenture of mortgage covering property of the Allied Owners' Corporation. Bonds of the debtor were issued and secured by this mortgage. No provision was made for the Manufacturers' Trust Company, as such trustee, to vote any of the bonds, whether or not claims were filed. The District Court denied the right of the trustee to vote upon all questions respecting the plan of reorganization. Under the plan of reorganization proposed, the mortgage was to be modified as to the rate of interest and time of maturity.

This appeal involves the sole question of a claimed right of the trustee to vote, to the exclusion of the bondholders, on the plan of reorganization, or at least in behalf of such bondholders who have not joined committees or who have not exercised their right of voting on the plan as creditors of the debtor.

The rights and duties of the trustee under the indenture of mortgage were that the conveyance of the debtor's property was in trust "for the equal and proportionate use, benefit and security of all present and future holders of the Bonds issued under this Indenture, * * * without preference, priority or distinction as to lien or otherwise, * * * of any one Bond or coupon over any other Bond or coupon." Article 7, section 3, provides as to remedies in event of default so that the trustee "may, and upon the request in writing of the holders of twenty-five per cent. (25%) in principal amount of the Bonds then

outstanding, shall, by notice in writing delivered to the corporation, declare the principal of all Bonds then outstanding, together with all accrued and unpaid interest thereon * * * to be due and payable. * * *" Article 7, section 14, provides: "In case default shall be made in the payment of the principal of any such bonds * * * by a declaration as authorized by this indenture * * * then the Corporation will pay to the Trustee, for the benefit of the holders of the Bonds and coupons then outstanding, the whole amount then due and payable on all such Bonds and coupons, for interest or principal, or both, * * *" and "The Trustee, in its own name and as Trustee of an express trust, shall be entitled to enforce payment of and to receive all amounts then remaining due and unpaid upon any and all of the Bonds and coupons then outstanding, for the benefit of the holders thereof, and shall be entitled to recover judgment for any portion of the indebtedness remaining unpaid, with interest, as aforesaid." ·

In the event of default, by section 4, the trustee "may proceed to protect and enforce its rights and the rights of the bondholders by appropriate judicial proceedings, by suit or suits at law or in equity, * * * or by the enforcement of any other appropriate legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce any of its duties or rights hereunder or any rights of the bondholders."

Section 5 provides for the right of sale of the mortgaged property in case of default. Section 19 provides that "No holder of any Bond or coupon shall have the right to institute any suit, action or proceeding in equity or at law for the foreclosure of this Indenture, or for the execution of any trust or power hereof, or for the appointment of a receiver, or for the enforcement of any other remedy under or upon this Indenture. * * *"

In order to foreclose, the written request of 25 per cent. of the bondholders is required. By section 21, "no remedy by the terms of this Indenture conferred upon or reserved to the Trustee * * * is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or by statute, and may be exercised by the Trustee. * * *"

Section 23 provides: "All rights of action under this Indenture, or under any of the

Bonds secured hereby, * * * enforcible by the Trustee, may be enforced by the Trustee without the possession of any such Bonds or the coupons thereunto belonging, or the production thereof on the trial * * * and any such suit or proceedings instituted by the Trustee shall be brought in its own name for the ratable benefit of the holders of said Bonds and coupons * * *."

Defaults occurred under this trust indenture, and a foreclosure is now pending. The appellant claims it is a creditor as embraced within the provisions of section 77B and has a right to vote, representing all bondholders, some of whom have joined a committee of bondholders and others who have not. The powers and duties of this trustee are measured by the terms of the indenture of mortgage, and we must look to that instrument for all the authority of the trustee. Colorado & So. Ry. Co. v. Blair, 214 N. Y. 497, 108 N. E. 840, Ann. Cas. 1916D, 1177. The provisions of the mortgage as above quoted give ample authority to the trustee named therein to protect and secure the property deeded in trust for the use and benefit of the bondholders. The mortgage does provide that "the Trustee shall be under no duty * * * to do any other act which may be suitable to be done for the better maintenance or continuance of the lien or security hereof, * * *" and that "The trustee shall be under no obligation or duty to perform any act hereunder or to institute or defend any suit in respect hereof unless properly indemnified to its satisfaction."

But nothing in the mortgage is indicative of authority to the trustee to vote for or against any plan affecting the lien of the mortgage. The important authority to require the trustee to declare the principal of all bonds due is given to the holders of one-fourth of the bonds in the event of default under the indenture, and there is a provision that only the holders of the majority in the amount of the bonds may waive the consequences of a default and rescind the trustee's declaration even though the original default has been entirely remedied. It seems to have been the intention, as expressed in the mortgage, that the trustee should not have any discretionary power independent of the will of the bondholders, for section 16 provides: "The holders of a majority in principal amount of the bonds then outstanding shall have the right, by an instrument in writing executed and delivered to the Trustee, to direct the method and place of conducting of all proceedings to be taken for the sale of the mortgaged property, or any portion thereof, or for the foreclosure of the indenture. * * *"

The majority in amount of the bonds could remove the trustee, and, if the trustee attempted to bind the bondholders or a majority of them against their will, the bondholders could nullify any such attempt by action under the provisions of section 13. The authority of the trustee is thus limited. It cannot ask for further authority at this late day. In order to make the acts of the trustee binding on the bondholders, the trust deed or mortgage by its terms must show that the trustee was authorized to represent the bondholders, for the trustee has no power or authority to compel the bondholders to make a new and different contract, nor has it the power to discharge or compromise the security which it holds as trustee. Clark v. St. L., A. & T. H. R. R. Co., 58 How. Prac. (N. Y.) 21; Miller v. Rutland & W. Ry. Co., 36 Vt. 452; Thompson on Corporations (2d Ed.) § 2593. The trust is to hold and enforce specific security, not to invest or reinvest funds. Without the consent of the bondholders, the trustee could not accomplish a reorganization of the issue of bonds or substitute a new bond or mortgage for the old. Colo. & So. Ry. v. Blair, supra; Hollister v. Stewart, 111 N. Y. 644, 19 N. E. 782.

Cases holding that, when a trust deed is sufficiently explicit, the trustee may file a proof of claim thereon in a bankruptcy proceeding on behalf of all bondholders [In re Paramount Publix Corp. (C. C. A.) 72 F. (2d) 219; In re United Cigar Stores Co., 68 F.(2d) 895 (C. C. A. 2)], do not imply that a trustee thereby has an independent status as a creditor empowering him to decide whether to accept a smaller amount or extend the time of payment. In filing a claim, the trustee does so in behalf of principals, the bondholders; it does so as a duly authorized agent. A trustee of a mortgage may not attack a plan of reorganization as inequitable. Guaranty Trust Co. v. Missouri-Pacific Ry. Co. (D. C.) 238 F. 812. And a claim in bankruptcy filed by a trustee will be expunged when the two persons holding all the bonds have filed as the sole claimants on the bonds secured by the mortgage. U. S. Trust Co. v. Gordon, 216 F. 929 (C. C. A. 6). This mortgage nowhere gives rights to the trustee to decide whether or not changes in the debt obligation should be made.

204

Section 77B is concerned with corporate reorganizations. Its principal purpose was to provide relief against recalcitrant minority creditors or debtors unable to reach all creditors. Corporate creditors are often holders of bonds or obligations issued with a mortgage as security and a corporation as trustee. Such mortgages usually provide for a two-thirds vote of the bondholders as being necessary for changes in the security of the mortgage. The law requires that a plan of reorganization be accepted by two-thirds of each class of creditors. If the trustee of a mortgage were to vote for all the bondholders on every plan which affected the security distinguishing its bond issue and making it a separate class, the two-thirds requirement would be meaningless and one of the purposes of the law would be defeated. Congress, in legislating, did not place a trustee in the position of censor of plans of reorganization. A trustee to so act must be a duly authorized agent for the purpose, as suggested in subdivision (b), § 77B, of the act (11 USCA § 207(b). The creditors' beneficial interests are not to be impaired by a trustee exercising such power unless it clearly appears that such power has been given.

It is contemplated by clause 9, subd. (b), § 77B, of the act, 11 USCA § 207 (b) (9), that liens will be affected under plans providing relief with the assent of two-thirds of each class of creditors, for it provides for a plan which may include "the satisfaction or modification of liens, indentures, or other similar instruments, the curing or waiver of defaults," etc. And subdivision (h) provides that a trustee of any obligation of the debtor may be compelled to join in a conveyance to carry out a plan. If a trustee's acquiescence were essential, it could not be so compelled. The trustee's judgment must not be substituted for that of the real creditors who are to be safeguarded in passing upon the question of whether a plan is fair and equitable.

We need not decide whether the trustee should be permitted to vote upon the plan as representing absent bondholders who have not exercised their privilege of voting. The trustee could not affect the result by voting unrepresented bonds, because the votes of the committee, which may be cast in favor of the plan, are more than two-thirds of the bondholders. The question of absentee bondholders' representation through the trustee for voting is therefore moot.

Order affirmed.