Final order and order of the County Court of Orange county affirmed.

---

INSA R. MEISEL, Who Sues on Behalf of Herself and of All Other Holders of Collateral Trust Four Per Cent Bonds of 2002 Executed by Chicago, Rock Island and Pacific Railroad Company, Respondent, v. CENTRAL TRUST COMPANY OF NEW YORK, Appellant.

First Department, October 26, 1917.

Trust — powers and duties of trustee under deed of trust — discretionary power of trustee to foreclose lien upon pledged stock instead of selling same at public auction — sufficiency of complaint in suit for accounting — allegations of legal conclusions — objection to allowances to counsel and special master cannot be made in collateral action — liability of trustee for profits upon money held as representative of court.

The powers and duties of a trustee are limited and defined by the deed of trust under which he acts, and when that deed confers upon him a discretion as to the course to be pursued in a given contingency and he exercises that discretion in good faith and is guilty of no fraud or gross negligence, he cannot be called to account and mulcted in damages because some one of his *cestui que trust* considers that he should have adopted a different course, or even if, in the event, it appears that a different course would have resulted more favorably to the beneficiaries of the trust.

Where a railroad company issued bonds and to secure the same executed a deed of trust to a trust company as trustee of all of the shares of the capital stock of a railway company then owned by said railroad company,

the trustee by electing to foreclose its lien upon the pledged stock by bringing a suit in equity in the United States District Court, instead of exercising the power of sale conferred upon it did not become liable in damages to the bondholders, where such course was specifically within its discretion under the terms of the deed of trust, and it does not appear that the trustee was guilty of bad faith or fraud or was actuated by any unworthy motive.

Complaint in a suit by bondholders against said trustee examined, and *held*, insufficient to justify a judgment for an accounting by the defendant.

General allegations of wrongdoing by the defendant, based upon undisclosed facts, are mere legal conclusions and insufficient to support such an action.

Since it was within the discretion of the trustee to institute a suit for the foreclosure of its lien, the allowances to counsel and the special master lay within the discretionary power of the court in which the suit was brought and cannot be questioned in a collateral action, although such allowances may have been made upon consent.

If any fraud was practiced upon the court influencing its action in making said allowances, application should be made to said court for relief.

The trustee in receiving and holding the proceeds of the action pending the distribution thereof acted as the representative and depository of the District Court and not in its capacity as trustee under the trust deed, and hence its liability to account for profits or interest earned thereupon is to the District Court and not directly to a bondholder.

The fact that the bondholders acquiesced in the act of the trustee in bringing suit for a foreclosure and accepted the benefits of the judgment in that suit, is tantamount to a ratification thereof.

APPEAL by the defendant, Central Trust Company of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of March, 1917, overruling a demurrer to the complaint.

*Lewis H. Freedman,* for the appellant.

*Roger Foster,* for the respondent.

SCOTT, J.:

In the year 1902 the Chicago, Rock Island and Pacific *Railroad* Company issued its bonds to the extent of $71,353,000, and to secure the same executed a deed of trust to defendant as trustee of all of the shares of the capital stock of the Chicago, Rock Island and Pacific *Railway* Company then owned by said railroad company and amounting at their par value to

$71,353,500. The shares were thus delivered in trust for the common and equal use, benefit and security of all holders of the aforesaid bonds designed to be secured by said stock.

Of these bonds the plaintiff, at the time of the default and foreclosure hereinafter mentioned, held four of the face value of $1,000 each. Interest coupons were attached to each bond and the interest was apparently paid regularly (at least the complaint alleges nothing to the contrary) until May 1, 1914, when the railroad company, the obligor on said bonds, made default in payment of the interest coming due on that day. Said default having continued for ninety days, the defendant as authorized by the deed of trust aforesaid, by a notice in writing delivered to said railroad company declared the principal of said bonds outstanding to be immediately due and payable. On or about September 3, 1914, a suit in equity was begun by defendant in the District Court of the United States for the Southern District of New York against the said railroad company to foreclose the lien upon the said shares of stock of the said railway company created by said trust agreement. The said *railroad* company answered in said suit in equity, substantially admitting all of the allegations in the bill of complaint therein. On or about October 10, 1914, a decree of foreclosure was entered in said suit in equity which decree declared that all the bonds issued under said trust agreement were due and payable and that the property pledged by said trust agreement to secure payment of said bonds, namely, said shares of stock and the certificates thereof should be sold at public auction. Subsequently on or about December 22, 1914, said sale took place. Said stock was sold for the sum of $7,135,300. The said sale was confirmed by an order of said District Court of the United States, made and entered in said suit on or about January 6, 1915. The purchasers at said sale were the committee hereinafter described. The greater part of the purchase price at such sale was paid in said bonds. On or about January 14, 1915, said special master deposited with the said defendant the sum of $1,335,938.68, which was the amount of the purchase price of said stock at said sale that was not paid in bonds. On or about January 15, 1915, a judgment was entered in the said suit in equity in the

District Court of the United States against said railroad company in said action for the amount of $68,239,252.88 as a deficiency judgment, namely, the balance due from said defendant to the holders of said bonds after the credit to said defendant of the proceeds of said sale. It is further alleged that in the course of the foreclosure suit one Amster, a holder of some of the bonds in question, petitioned the District Court that he be allowed to intervene in the suit. His application was denied by the District Court, but on appeal to the Circuit Court of Appeals, was granted.

A committee was organized, as it is alleged by procurement of defendant, which essayed to represent the bondholders and described itself as a committee for the protection of said bondholders. It was this committee which became the purchaser of the bonds at the foreclosure sale as hereinbefore stated.

After the sale the United States District Court by order fixed the sums to be paid to the trustee and its counsel for disbursements, costs and allowances; to the special master appointed by the court for his services, and to the intervenor Amster for his costs. The order also contained elaborate provisions as to how the several holders of the above-described bonds might obtain the delivery to them, as payments on account of their bonds, of a proportionate amount of the pledged stock which had been deposited under the deed of trust, and sold under the decree of foreclosure. One of the conditions of obtaining such shares of stock was that the bondholders should pay to the special master, to whom the execution of the decree was intrusted, for every ten shares of stock delivered to such bondholder the sum of $1.50, being the proportionate part of the costs, allowances and expenses in the cause aggregating substantially $107,000, and the sum of $2.95, being the proportionate part of the expenses of the aforesaid committee aggregating substantially $210,000. The plaintiff complied with the provisions of said order and paid the special master thereunder the sum of $4.45 upon each bond held by her, or an aggregate sum of $17.80, and received the corresponding amount of the pledged stock.

In the course of the foreclosure suit the United States District Court directed the special master to deposit the cash

paid upon the sale of the stock with the defendant, and, as alleged, said defendant made great profit by loaning said moneys. Whether or not such profits were in any way accounted for in the Federal court is not alleged.

This is the history of the case as outlined at considerable length in the complaint. There are innumerable charges of fraud and bad faith against defendant, some of which it will be necessary to consider, others of which are evidently pleaded to create an atmosphere of doubt and consist merely of legal conclusions without any stated facts to support them. The relief demanded is that defendant account to plaintiff, and to such other bondholders similarly situated who elect to come in and contribute to the expenses of the action, for their acts and proceedings as trustee and for all moneys received by it in the execution of its trust.

Of course all the well-pleaded facts are admitted by the demurrer, and the question to be determined is whether any facts are so pleaded as to justify a judgment for an accounting. The main contention made by plaintiff as appears from the complaint, and upon which most of her other contentions depend, is that the defendant was guilty of an abuse or error of discretion in electing to foreclose its lien upon the stock by action, instead of selling the stock at public auction without action as it was authorized to do under the deed of trust.

The powers and duties of a trustee are limited and defined by the deed of trust under which he acts (*Colorado & Southern R. Co.* v. *Blair*, 214 N. Y. 497), and when that deed confers upon him a discretion as to the course to be pursued in a given contingency, and he exercises that discretion in good faith, and is guilty of no fraud or gross negligence, he cannot be called to account and mulcted in damages because some one of his *cestui qui trust* considers that he should have adopted a different course, or even if, in the event, it appears that a different course would have resulted more favorably to the beneficiaries of the trust.

The trust deed involved in the present action is not pleaded *in extenso* in the complaint, but enough of it is pleaded to show the power vested in the trustee. By article 5, section 5, it is provided that when the pledgor shall make default in the payment of interest, and such default shall continue

for ninety days, and the trustee shall declare the principal to be due and payable, all of which is alleged to have happened in this case, " the Trustee shall, in its discretion, be forthwith entitled, either personally or by its attorneys or agents, and shall forthwith proceed to sell and convert into money, singly or collectively, the securities constituting the trust estate. Such sale or sales, in the discretion of the Trustee, may be at public auction at such place, at such time and on such terms as the Trustee may fix, or may be at any regular brokers' board or stock exchange in the City of New York, N. Y., or elsewhere in its discretion."

By article 5, section 9, of said trust deed it is further provided that " The Trustee, however, instead of exercising the power of sale herein conferred upon it, may, in its discretion, and shall, on the request in writing, of the holders of a majority in amount of the bonds hereby secured and then outstanding, proceed by a suit or suits at law or in equity, as the Trustee may be advised by counsel, to enforce the payment of the said bonds and coupons and to foreclose this trust agreement and to sell the securities constituting the trust estate under the judgment or decree of a court or courts of competent jurisdiction."

Article 5, section 11, provides how the proceeds of any sale shall be applied, viz.: *First*, to the costs, expenses, fees, disbursements and counsel fees of the trustee; *second*, to the payment and satisfaction of the outstanding bonds and unpaid interest, and *third*, the surplus, if any, to be paid over to the pledgor.

It is not alleged that any request was made to the trustee by fifty per cent of the bondholders as to the method of realizing upon the security, but it is alleged that, exercising the discretion thus vested in it, the trustee elected to foreclose its lien upon the pledged stock by bringing a suit in equity in the United States District Court for the Southern District of New York. To adopt this course was specifically within the discretion of the trustee by the precise terms of the deed of trust, and it is nowhere alleged that in thus exercising its discretion the trustee was guilty of bad faith or fraud or was actuated by any unworthy motive. It is alleged in general terms that the defendant " has been guilty in the

discharge of its functions and obligations as trustee under said trust agreement of a large number of acts of misfeasance of duty and of malfeasance and has failed to perform its duties and obligations under said trust agreement in a large number of particulars all of which are to the loss and detriment of this plaintiff, and to the loss and detriment of the other holders of said bonds."

These general allegations of unspecified wrongdoing of course are nothing more than the legal conclusions of the pleader based upon undisclosed facts and will not support such an action as this. When it comes to specifying what the plaintiff considers to have been the wrongful acts of the defendant, at least so far as the choice of a remedy is concerned, the complainant contents herself with allegations designed to show that it would have been wiser and more economical to have sold the stock at public auction without resorting to a suit in equity. But this was the very question committed by the trust deed to the discretion of the trustee and that discretion is not subject to question by the bondholders, or to review by the court, simply because a bondholder or the court would under the circumstances have exercised the discretion differently. Indeed, a reading of the complaint itself suggests many reasons why it might have been impracticable and unwise to adopt any other course than that which the defendant did adopt. So far as concerns any cause of action against defendant based upon its election to proceed by a suit in equity, rather than by a sale at auction without judicial decree, the decree is barren of adequate allegations.

The next charge against the defendant is that " with the design of procuring excessive and unreasonable profits for itself and for its officers and for its shareholders and also with the design of enabling certain persons who had acted as Directors of said Railroad Company and of said Railway Company to acquire said stock at much less than its real value, procured the organization of a certain committee of which the president of said defendant was a member and the other members were selected by him and by said Trust Company. Said Committee described itself as a committee for the protection of the bondholders of the Chicago, Rock

Island and Pacific Railroad Company. Some of the members of said Committee were holders of shares of stock in said defendant Trust Company. Some of the members of said Committee were debtors of said defendant Trust Company. All of the members of said Committee were debtors of said defendant Trust Company. Some of the members of said Committee had close business relations with said defendant Trust Company. All of the members of said Committee had close business relations with said defendant Trust Company. Only two of the members of said Committee held any of the said Collateral Trust Gold Bonds of 2002. All of the members of said Committee were under the domination of said defendant Trust Company and of the said persons who had acted as Directors of said Railroad Company and said Railway Company as aforesaid and colluded with said Trust Company and said directors with which said defendant Trust Company also acted in collusion as aforesaid."

Here are plentiful charges of collusion, wrong motives and fraud, but, as before, there are no allegations of concrete facts. It is not shown in what way the defendant expected to make excessive and unreasonable profits for itself, or that it did make such profits as a result of procuring the appointment of a protective committee, and although it is alleged that the members of the committee were friendly to or engaged in the business of defendant it is not alleged that they or any of them were irresponsible or improper persons to act on such a committee, and it requires little .business sagacity to realize that it was to the interest of the bondholders as a whole that some committee should be formed to protect their interests upon the foreclosure of the lien. It is indeed alleged that " said Trust Company through its said president and other members of said Committee made public false statements concerning the receipts and earnings of the said Railway Company and of the condition of its property and of its financial affairs." Here again, there is no specification as to what the false statements were, and no hint as to how the defendant is to be held responsible for the acts of the committee, whose members, even if officers of defendant, were certainly not acting within the scope of any duty to the defendant.

The complaint then calls in question the costs and allowances made by the United States District Court in the course of the foreclosure suit. Assuming as we do that it lay within the discretion of the trustee to institute a suit for the foreclosure of its lien, the allowance to counsel and the special master lay within the discretionary power of the court in which the suit was brought, and it is not within the power of the court to question, in a collateral action, the manner in which that discretion was exercised. It is true that the orders of the District Court in that regard are alleged to have been made upon consent, but this would not justify us in assuming that the district judge, in ordering payments out of a trust fund, surrendered his own discretion and blindly accepted the sums agreed upon between counsel. To so assume would be to reflect upon the action of the judge and would be contrary to judicial experience. It is true that plaintiff alleges that the district judge was misled by exaggerated estimates of the amount and value of the services performed, and made his order relying upon such statements. If any fraud of the nature indicated was practiced upon the District Court, it is that court to which application should be made for relief for it would produce an intolerable condition of affairs if an order or judgment regularly entered in a court having jurisdiction to enter it, could be subjected, in a collateral action in another court, to an inquiry of the nature sought by the plaintiff here.

It is also alleged that the District Court directed the special master who conducted the sale to deposit the proceeds, pending distribution thereof, in the defendant trust company, and that said defendant loaned said moneys to divers persons and thereby derived large profits to itself and its stockholders, and for these profits the plaintiff seeks an accounting. It is quite clear that in receiving and holding this money the defendant acted as the representative and depository of the District Court, and not in its capacity as trustee under the trust deed, and its liability to account for profits or interest earned thereupon was to the District Court, and not to this plaintiff directly as a bondholder. It is not alleged that defendant has not accounted for and paid over interest on said deposit, but if it has not and should do so, it is the

District Court and not this court which should be applied to for relief.

Concerning all of the allegations of the complaint based upon the proceedings in the foreclosure suit in the United States District Court, we may appropriately quote the expression of the Supreme Court of the United States in *Kent* v *Lake Superior Canal Company* (144 U. S. 75, 91) as follows: " The matters alleged to be fraudulent are the steps taken to have the property foreclosed and the purchase thereon ensuing, and what is charged is that the holders of large amounts of the bonds and of all the receivers' certificates combined to bring about the foreclosure and to make the purchase.

" Epithets do not make out fraud, and the averments are substantially of legal conclusions not admitted by the demurrers, *Fogg* v. *Blair*, 139 U. S. 118, 127, and in themselves insufficient as stating a case of fraud practiced directly upon Wells and preventing him from seeking redress in the premises. The case attempted to be made was not a new one arising upon new facts, but one involving matters which the court was, or might have been, called upon to determine. And if, as asserted by his counsel, appellant's ' remedy grows out of the fraud, his right arises out of the errors committed to his prejudice,' then the remedy ought to have been sought in the court which rendered the decree and confirmed the sale." (See, also, *Gernsheim* v. *Central Trust Company*, 40 N. Y. St. Repr. 967.)

There are other charges of misconduct on the part of defendant as trustee in that it failed to sue the directors of the railroad and the railway company for waste of the corporate assets of said companies alleged to have occurred before the default in the payment of interest on plaintiff's bonds. As to the railroad company the defendant, as trustee, occupied toward it neither the position of a bondholder nor that of a stockholder. As to the railway company it held, before the default in the payment of interest, only a qualified title to the stock as pledgee, the beneficial interest resting in the pledgor who was entitled to manage the company and receive the dividends upon its stock. The trustee, up to the time of the default, was a mere custodian and had no

active duties except as specified in the deed of trust. (*Colorado & Southern R. Co.* v. *Blair, supra.*) Furthermore, it is not alleged that the defendant, as trustee, had any funds with which to prosecute such an action, or that any one offered to indemnify it against the expenses of such an action.

Finally, the plaintiff has acquiesced in the act of the trustee in bringing suit for a foreclosure, and has accepted the benefits of the judgment rendered in that suit. This is tantamount to a ratification of their acts. (*Butterfield* v. *Cowing,* 112 N. Y. 486; *Wormser* v. *Metropolitan Street R. Co.,* 184 id. 83.)

After a careful reading of the complaint and giving plaintiff the benefit of every reasonable intendment in her favor we are of opinion that she has failed to state any cause of action and that the demurrer should have been sustained.

The order appealed from is, therefore, reversed, with ten dollars costs and disbursements, and the demurrer sustained and complaint dismissed, with costs to appellant in all courts.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, demurrer sustained and complaint dismissed, with costs.