### Johnson and others *vs.* Fleet.

Where a father, in 1819, executed a *deed* of certain real estate to two persons *in trust*, to sell and dispose of the same at any time during his lifetime, *if they should deem it necessary*, and to invest the proceeds for the benefit of his wife and children; and if the property was not sold during his lifetime, on his decease to convey the same to his wife and children, share and share alike; and one of the trustees, *after* the decease of his co-trustee, in 1823, in the lifetime of the grantor, sold and conveyed the property to a third person for a valuable consideration, reciting the deed in trust; and the children of the grantor brought an action of ejectment to recover the property, on the ground that the *surviving trustee* had not power to convey, and that by the provisions of the revised statutes the *legal estate* had become vested in them : *it was held*, that the provisions of the revised statutes transmuting, in certain cases, *equitable* into *legal* estates applying only to cases of *express trusts*, and not to *implied* or *constructive trusts*, did not control this case, and that therefore the *action at law* would not lie.

It seems, had the conveyance by the surviving trustee been made *since* the revised statutes went into effect, that the *action at law* would have been sustained; but being made previous to those statutes, *it was held* that the action did not lie.

Whether the sale by the *surviving trustee* is good and operative, *quere.*

THIS was an action of *ejectment*, tried at the Kings circuit, brought by the plaintiffs, seven in number, the children of

*John J. Johnson,* to recover a portion of certain premises conveyed by their father to *Theodorus Polhemus* and *Gilbert Van Mater* by a *deed in trust,* bearing date 23d August, 1819. By the deed, *Johnson,* in consideration of *one dollar,* and for the purpose of conveying the premises upon the trusts afterwards specified, granted to *Polhemus* and *Van Mater* three parcels of land; one containing 26 acres, a second 4½ acres, and the third 10 acres *in trust,* 1. That the rents and profits of the premises, during the natural life of Johnson, should be paid to the wife of Johnson, or to such person as she should appoint; 2. That Polhemus and Van Mater, *trustees aforesaid,* should and might at any time during the natural life of Johnson, sell and dispose of the premises, or any part thereof, *if they should deem it necessary,* and execute deeds to the purchasers in fee simple, and in such case to *invest the proceeds of such sale* in the purchase of other real estate, subject to the same conditions as the premises granted, *or* to place the proceeds *out at interest* upon good security, *or* in the purchase of government or other stock, and to permit the rents, profits, interest and produce of the same to be received by the wife of Johnson as above provided; and 3. That from and after the decease of Johnson, *Polhemus* and *Van Mater,* or the *survivor* of them, and the *heirs,* executors or administrators of such survivor, (in case the premises were not sold,) should *convey* the premises granted to them, or such other real estate as might be purchased by them, unto the *wife* and *children* of Johnson in fee simple, share and share alike; and in case the premises should be sold, then to *divide* the proceeds arising from such sale and the accumulation thereof between the wife and children of Johnson in manner aforesaid. Polhemus and Van Mater became possessed of the premises. On the 28th May, 1820, Polhemus died. On 30th April, 1823, Van Mater, by deed, for the consideration of $10,000, conveyed the tract of 26 acres to the *defendant* in this cause, who paid the consideration money and entered into possession. The deed to the defendant *recited* that on the 23d August, 1819, Johnson, by deed, conveyed the premises sold to the defendant, to Polhemus and Van Mater, *upon certain special trusts in the said indenture*

*particularly set forth,* referring to the indenture and the re-cord thereof; and that in part execution of the trust, Van Mater conveyed, &c. The deed to the defendant contain-ed covenants against any acts done by Polhemus, seisin in Van Mater and a general warranty of title. On the 24th July, 1823, Johnson died, leaving him surviving his widow and seven children, the plaintiffs in this cause. On the 12th July, 1833, this suit was commenced. The above facts were found in a *special verdict.*

*D. Lord, jun. & P. A. Jay,* for the plaintiffs, insisted that the proviso for the sale of the premises contained in the deed of Johnson could not be lawfully executed after the death of *Polhemus;* that the sale by Van Mater was a breach of trust; that the defendant, purchasing with a full knowledge of the trust, became thereby himself a trustee for the plaintiffs; and that after the death of *Johnson,* in 1823, the trust was merely passive, and on the 1st January, 1830, the revised statutes transferred the *legal estate* to the *cestuis que trust,* the plaintiffs in this cause, and of course ejectment lies.

*J. Duer & E. Griffin,* for the defendants. The deed to Polhemus and Van Mater vested in them an estate in fee; such an estate being in trust, was a joint tenancy, and sur-vived to Van Mater on the death of Polhemus, and the deed from Van Mater, the surviving trustee, vested in the defendant an estate in fee simple. If the capacity to sell by the trustees is to be taken as a power, it is a universal rule that a power coupled with an interest survives to the surviving trustee; and they insisted that this is a power coupled with an interest, and that there is nothing peculiar in the terms of the trust deed to control the operation of the above general principles. If it is held that the execution of the power to sell was made to depend on the discretion of the trustees, such construction, it was contended, would not affect its survivorship; that the power to sell was not limited by any condition or contingen-cy, that the sale was to be made when deemed necessary by the trustees or the survivor of them, and that the judgment of the surviving trustee that a sale was necessary was suffi-ciently proved by the act of his selling to the defendant.

ALBANY,
October, 1835.

Johnson
v.
Fleet.

*By the Court*, NELSON, J.  The first question to be considered is, whether the remedy of the plaintiffs, if there be one, exists at law; and this must depend upon the further question, whether the estate claimed be a legal or an equitable estate.  Courts of law regard only the legal rights of the parties, and this rule has been adhered to with commendable strictness.  It was conceded upon the argument by the counsel for the plaintiffs, and there can be no doubt of the propriety of the concession, that before the revised statutes, the title set up by their clients was purely equitable, and they would have been obliged to resort to another forum to have enforced it.  Since these statutes, it is claimed to be good at law, and of course recoverable in ejectment.

The proposition is not to be controverted, that since, as before those statutes, *trusts* or *equitable titles* belong exclusively to the consideration of a court of chancery.  The well known and acknowledged boundary between the jurisdiction of the courts, has neither been obliterated or altered in this respect.  A large class of trust estates have been converted into legal estates by the operation of the revised statutes, 1 *R. S.* 727, 731; and for that reason, and that only, are the subject of common law jurisdiction: all other trust estates remain, as before, under the control of the court of equity.  The section chiefly instrumental in changing the legal character of these estates is the 47*th, page* 727.  It is as follows:  "Every person who, by virtue of any grant, assignment or devise, *now is* or hereafter shall be entitled to the actual possession of lands and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a *legal estate* therein, of the same quality and duration, and subject to the same conditions as his beneficial interest."  By this section, all formal trusts that have heretofore existed are at once turned into legal estates, and of course subject to the rules of practice applicable thereto; its operation is confined by the next section to trusts, *merely nominal;* and the 50th section provides, that it " *shall not extend to trusts arising or resulting by implication of law.*"  The language of the 47th section is broad: " now is or hereafter shall be entitled to the actual possession of lands and

the receipt of the rents and profits thereof, *in law or in equity,* shall be deemed to have the *legal estate ;*" and it is clear, unless the present case falls within the exception or 50th section, whatever title the plaintiffs possess must be a legal one.

It is not at this day important to go back to the 27 *Hen.* 8, commonly called the statute of uses, nor to look at the doctrine of uses and trusts, or the supposed failure of the great purpose of that statute, (by the limited construction of the courts of law,) which was to convert nominal uses into legal estates. The first use only was executed; and every other, though merely formal, being rejected at law, was taken up by the court of equity, and supported and enforced as a trust. It has been well remarked, that *trusts* since this statute are what *uses were* before *its passage.* Now the operation of the 47th section accomplishes all that could have been effected by the most liberal construction claimed for the statute of uses. All formal trusts created, however numerous or extended the series, are as by magic transformed into legal estates. A conveyance to A. in trust for B. in trust for C., at once vests the title in C., and would vest it in the *cestui que trust* last named, however numerous the trusts created. Whether the legal title would pass through each *cestui que trust,* or at once pass from the grantor or devisor to the last, it is not now important to determine. It is a question that may hereafter arise under this section, and call for consideration.

Thus far there can be no doubt as to the operation of these provisions, and the intent of the legislature ; and according to the notes of the revisors, the above result is all that was designed. *See Reports of Revisors, ch.* 1, *pt.* 2, *p.* 40, 41. If this section is extended by construction beyond *formal express trusts,* we do not know where a line is to be drawn between a legal and equitable title. *Implied* trusts are well known in the law as contra-distinguished from *express* trusts, and are classed by approved authorities under a distinct head. If any are embraced within the section, which are they? Resulting trusts are not, because they are expressly excepted ; so all others arising by implication, that is, by construction or operation of law. *50th section.* The defendant, if a trustee

at all, falls under this latter class, and is so considered by all the authorities. 1 *Cruise, tit. Trust, ch.* 1, § 29, 61, 62.

Mr. Maddock, in his treatise on the principles and practice of the court of chancery, says that trusts " are either *express* or *implied:* under which head of implied trusts, may be included resulting trusts, and all such trusts as are not express. Express trusts are created by deed or by will; implied trusts arise in general by construction of law upon the acts or situation of the parties." 1 *Maddock*, 446 ; see *also pages* 577, 8, and 2 *id.* 125. In the case of *Lloyd* v. *Spillet*, 2 *Atk.* 150, Lord Hardwicke, after specifying two instances of resulting trusts since the statute of frauds and perjuries, says, " I do not know in any other instance, besides these two, where this court have declared resulting trusts by operation of law, unless in cases of fraud, and where transactions have been carried on *mala fide.*" 2 *Fonbl.* 116, *and note.* 2 *Vernon*, 20, *n.* 2 *Madd.* 112, *and note.* Purchasers, for a valuable consideration, *with notice of a trust,* are deemed guilty of a fraud, and upon that ground are held to be trustees for the person beneficially interested. 1 *Cruise, tit. Trust, ch* 1, § 61, 62. 2 *Fonbl.* 151. *Ld. Bacon's Read.* 16. 1 *Johns. Ch.* 575, 301. The class of cases in chancery, where the statute of limitations has been set up by the constructive trustee to bar the claim of the beneficial owner, may be referred to upon this point. No lapse of time bars a direct trust between the trustee and *cestui que trust ;* but where a purchaser takes possession of property in his own right, and is afterwards by matter of evidence or construction turned into a trustee, lapse of time may be pleaded in bar. 3 *Johns. Ch.* 216. 17 *Ves.* 87. 2 *Sch. & Lef.* 633. 1 *Madd.* 446. Again ; the exception contained in the 50th section was obviously taken from the proviso to that section of the statute of frauds that requires all declarations of trusts to be in writing. 29 *Car.* 2, § 20. 1 *R. L.* 78, § 12, 13. 2 *R. S.* 134, § 6, 7. The language of the proviso to 29 *Car.*, after enacting that all declarations and creations of trusts shall be in writing, is, that all conveyances where trusts and confidences shall arise or result by implication of law shall be as if that act had never been made. It is under this

exception that the somewhat numerous class of implied trusts have been saved from the effect of this statute.

Now if the trust in this case (and one must be raised to be executed under the 47th section, for the deed is not void but only voidable,) does not arise by implication of law, then it cannot be created or exist, without some writing signed by the party or his agent. Nothing of that kind appears. It is true, the trust deed is in part recited, and referred to in the deed to the defendant, and is therefore sufficient notice of the trust, and also perhaps of the want of power (if none exists) to convey an indefeasible title, as it was a fraud in the defendant to buy another person's estate knowingly; but there is no other trust existing than what arises in all cases of a purchase of a trust estate, with notice. The defendant has not declared or created a trust, unless the law imposes it upon him by matter of evidence and construction. Notice from the deed is no higher or more operative than if proved *aliunde.*

The transmutation of formal express trusts into legal estates was a very simple operation, because, in equity, the *cestui que trust* is deemed the legal owner, and exercises substantially the same dominion over the estate as he now can at law. A trustee in such a case seemed a very useless personage, and in truth was so, except so far as it enabled the *cestui que trust,* his friend, to cheat his creditors, and to be himself in turn cheated, and to bring the estate within the control of the court of chancery. Trusts, however, that arise from matter of evidence, and by construction are more complicated, are " creatures of equity," depending wholly upon the application of equitable principles, and have been wisely left to the superintendance of that jurisdiction. It would be confounding two distinct departments of the law, and turning courts of common law into equitable tribunals, if we were to entertain them. We therefore repudiate all constructive trusts, all that are not expressly declared within the provision of the statute of frauds. 1 *R. L.* 79, § 12, 13. 2 *R. S.* 134, § 6, 7.

If the deed to the defendant had been executed since the revised statutes, the question between the parties would have been triable at law. By the 67th section, 1 *R. S.* 730, " When the trust shall be expressed in the instrument creating the es-

tate, every sale, conveyance or other act of the trustees, in contravention of the trust, shall be *absolutely void."* This is a new rule, and must be construed to apply prospectively. It will behove purchasers hereafter to examine the deed under which the vendor holds his title.

On the second question, whether the power given to the trustees to sell was properly executed, there can be no doubt the fee existed in Gilbert Van Mater, the survivor, at the time of his conveyance to the defendant, and of course the legal title passed to the defendant. Having purchased with notice, however, in equity he would be deemed to hold subject to the trusts, unless he can protect himself under the power. The execution of the power, therefore, will be the important question in the case ; and that must depend upon the construction of the deed of trust. As we have come to the conclusion on the first point, that the case belongs to the consideration of another forum, it would be indelicate and presumptuous in us to express an opinion upon what is deemed the only serious question involved.

Judgment for defendant.