United States Mortgage and Trust Company, Plaintiff, *v.* New York Dock Company et al., Defendants.

(Supreme Court, New York Special Term, July, 1919.)

Mortgages — construction of trust mortgage — trustees — actions — bonds — insurance (fire).

A trust mortgage given by defendant, a dock company, upon a large number of its bonded and free warehouses, piers of various sizes and manufacturing buildings, provided that all property then owned or thereafter acquired by the dock com-

pany should be subject to the mortgage, by the terms of which the dock company covenanted that all losses, if any, under all policies of fire insurance should be paid to the trustee under the mortgage for the benefit and protection of the owners and holders of the bonds secured by the mortgage, and used by the dock company with the consent of the trustee in repairing " or replacing property damaged or destroyed." A part of the mortgaged property consisting of an elevator was totally destroyed by fire and the trustee under the mortgage received $460,340.91, representing the proceeds of fire insurance on a portion of the mortgaged premises. The cost of a modern grain elevator on the site of the one destroyed would be over $1,500,000. *Held,* that the words "replacing property damaged or destroyed" should not be construed as meaning the literal replacement on the same site of the same kind of a structure, but that said requirement was complied with if the insurance money was expended in the construction of property suitable for the use of the dock company although not of the same character as that destroyed and even though not located on the same spot.

Where it appears that if the site of the burned elevator be improved with a pier at a cost of $300,000 the return will be approximately thirteen per cent on the investment and that the improvement will be of advantage to the dock company as owner of the property and will also improve the security of the bond holders, the dock company has the right to use the insurance money received by the trustee, for the contemplated improvement.

Due notice having been given to all bond holders and all parties necessary to the complete determination of an action to obtain the instruction of the court as to the disposition of the insurance money, a specific finding that all such bond holders should be bound by the decree to be entered, was proper.

ACTION for the purpose of obtaining the instruction of the court as to the disposition of certain insurance moneys.

Patterson, Eagle, Greenough & Day (Sherman Day and Carroll G. Walter, of counsel), for plaintiff.

Davies, Auerbach & Cornell (Charles E. Hotchkiss and Harold C. McCollom, of counsel), for defendant New York Dock Company.

Frederick L. Allen (Frederick L. Allen and Murray Downs, of counsel), for all defendants other than the New York Dock Company.

Giegerich, J.　The action is brought by the plaintiff as trustee of a mortgage upon the property of the defendant New York Dock Company for the purpose of obtaining the instruction of the court as to the disposition to be made of the sum of $460,340.91, representing the proceeds of fire insurance on a portion of the mortgaged property. The bonds issued and outstanding under the mortgage amount to $12,550,000. There are approximately 2,500 holders of such bonds, and they are scattered in various parts of the world, many of them being held abroad. Three holders of bonds are made parties defendant, and have appeared and answered, and have taken part in the trial. The defendants so appearing are the Mutual Life Insurance Company of New York, which is the owner of $3,072,000 par value of such bonds, and the copartners composing the firm of A. Iselin & Co., which firm has the care and possession on behalf of clients of about $1,625,000 par value of the bonds, and the Connecticut Mutual Life Insurance Company, which is the owner of $330,000 par value of the bonds. On October 13, 1917, a fire destroyed that part of the dock company's property known as Dow's Stores, consisting of a grain elevator, with adjacent buildings, which were used for the storage of hides, the use of the property as a grain elevator having become unprofitable. The property was insured against fire, and the plaintiff has received the amount above named on account of such fire insur-

ance. The property owned by the dock company and covered by the mortgage in question comprises 159 bonded and free warehouses, 34 piers of various sizes and 20 manufacturing buildings. The mortgage provides that all property then owned or thereafter acquired by the dock company shall be subject to the mortgage. The grain elevator which was destroyed was no longer profitable to operate. During the first twenty years of its existence, coming down to about 1900, it made a fair return, but since that time the competition of the grain elevators erected by the Erie Railroad and the Lehigh Valley Railroad at their respective terminals on the New Jersey side of the river cut into the business so that the warehouse in question, being located in Brooklyn, had to depend chiefly for its business upon such overflow as there might be in times of great congestion when the railroad terminal elevators could not handle all the grain that came in. The cost of a modern grain elevator on the site of the one destroyed would be over $1,500,000. The most profitable properties owned by the dock company are its piers, and if the site of the burned elevator is improved with a pier, as is contemplated, at a cost of $300,000, the return will be approximately thirteen per cent on the investment, and that, too, on a ten-year lease, whereas since the erection of the Erie and Lehigh Valley elevators, the average return on the property in question as formerly improved was only about two per cent. It is apparent, therefore, that the improvement contemplated will be of advantage to the dock company as owner of the property, and will also improve the security of the bondholders under the mortgage. The question is whether, under the terms of the mortgage, the dock company has the right to use the insurance money for the improvement contemplated. In addition to the new pier contemplated

and now under construction on the site of the burned property the dock company has, since the time of the fire in question, expended large additional amounts on other new piers and additions and betterments to old piers. Between the date of the fire and November 30, 1918, such expenditures aggregated $1,062,694.94, and between November 30, 1918, and December 31, 1918, it spent an additional $132,351.88 for additions and betterments, principally upon new piers and bulk-heads. On January 31, 1919, the dock company sub-mitted proof of these expenditures to the trustee, and requested the trustee to turn over the entire fire insur-ance proceeds, amounting to $460,360.91. The trustee appointed an engineer and appraiser to inspect the new work done, and the engineer certified that he was satisfied that the improvements and betterments repre-sented in the statements furnished by the dock com-pany to the trustee had been made, and the appraiser certified that in his opinion the money had been judi-ciously expended and added the amount of the expendi-tures to the market value of the property. The trus-tee, however, declined the dock company's request that the insurance proceeds be turned over for the purpose of reimbursing the dock company for such additions and improvements. The contention of the trustee is that the insurance money should be held and treated as a sinking fund. The rejoinder of the dock company to this claim is that the income derived from the money held as a sinking fund would be very small as compared to the income to be derived if it were applied to the improvements named. The ques-tion is whether the provisions of the mortgage instru-ment are such as to permit the use of the money which the dock company desires. Among other things the mortgage contains the following covenant on the part of the dock company, namely: "The dock company

further covenants that it shall and will also and at all time, so long as any of the bonds hereby expressed to be secured by this indenture are outstanding and unpaid, keep its buildings and appurtenances insured fully against loss or damage by fire, and will pay all premiums upon all policies for such insurance, which policies shall be held by the trustee. Such fire insurance shall be written by companies to be selected or approved by the trustee, and all losses, if any, under such policy of insurance shall be made payable to the trustee for the benefit and protection of the several owners and holders of the bonds secured hereby, and shall be used by the dock company, with the consent of the trustee, in repairing or replacing property damaged or destroyed.'' Considering the fact that the mortgage in question covers a large number of properties and considering the other facts of the case, I do not think it should be held that the words '' replacing property damaged or destroyed '' should be narrowly construed as meaning the literal replacement on the same site of the same kind of a structure. I think, under the circumstances shown in this case, it does not stretch the meaning of the words employed if it be held that the requirement is complied with if the insurance money is spent in the construction of property suitable for the use of the dock company, although such property is not of the same character as that destroyed and even though it be not located on the same spot. Other portions of the mortgage provide that its lien shall extend to any property acquired by the dock company after the execution of the mortgage, and still other portions provide that the dock company may sell any of its lands or other property covered by the mortgage which in the judgment of the board of directors of that company may be unnecessary or inadvisable to be retained for the pur-

poses of the business of the dock company, and that the proceeds of such sale may be used by the dock company for the acquisition of new property or for improvements or betterments, all of which shall immediately become subject to the lien of the mortgage. There are certain conditions attached to the right of the dock company to make such sales, safeguarding the rights of the trustee, which need not be averted to. The point in referring to these other provisions of the mortgage is to show that the instrument was evidently drawn with the idea of leaving a large amount of elasticity in the situation. The argument of the dock company is supported by the brief presented on behalf of the defendants above named, whose aggregate holdings of the bonds secured by the mortgage are very large, as above shown. The brief so presented makes a strong argument in support of the claim of the dock company to the insurance moneys in question and takes the position that the best interests of the security will be advanced by the use of the moneys for the improvement of the plant as a whole and to increase its productiveness, and thereby its value, and that the purpose of the covenant is to provide not for the insurance of specific buildings and the application of the insurance moneys to the repair and replacement of those specific buildings, but to require the dock company to insure all of its property for the benefit of the entire security, to the end that if any portion were destroyed the value of the security would not be depleted thereby, but that the loss would be taken care of by the insurance in form covering the specific property, but in effect contributing to the value of the security as a whole. I am satisfied not only that it is wise business policy for the insurance moneys to be used as these bondholders desire, but that such a situation was contemplated and provided

for by the mortgage, and that the intention of the instrument was that the moneys should be used as the dock company seeks to use them. I am further of the opinion that, as due notice has been given to all of the bondholders and as all the parties are before the court who are necessary to a complete determination of this action as against all the bondholders secured by the mortgage, it is proper to make a specific finding that all such bondholders shall be bound by the decree to be entered herein. Code Civ. Pro. § 448; Federal Equity Rule No. 38; *Colorado & Southern R. Co.* v. *Blair,* 214 N. Y. 497; *Kerr* v. *Blodgett,* 48 id. 62; *Brinckerhoff* v. *Bostwick,* 99 id. 185; *Hirshfeld* v. *Fitzgerald,* 157 id. 166. My conclusion is that there should be judgment in the form set forth in the defendant company's requests for findings as found by me. The requests submitted have been passed upon as indicated on the margins thereof. Let a complete copy of the decision, embodying all findings made by me, be presented for signature upon notice.

Judgment accordingly.