John it. Tenney, J.
Plaintiffs Edward Groseclose and David L. Shinaman are minority bondholders of A.C. Leasing, Inc., holding about 15% of the outstanding bonds. The bonds were purchased September 7, 1962, and were due January 1, 1966. They are to pay interest at 7% per annum payable semiannually commencing from April 18, 1961. The bonds are secured by a mortgage deed of trust from A.O. Leasing, Inc. to Merchants National Bank & Trust Company of Syracuse.
The mortgage deed provides that in the event of default for 60 days in the payment of interest, the principal may be declared due. No interest has been paid, nor has the principal or any portion thereof been paid. Demand to foreclose has been made and refused by the trustee, because (1) it is not in the best interests of the bondholders; (2) more than 51% of the bond *112 holders have not joined in the demand as required under paragraph ‘ ‘ Tenth ’ ’ of the trust agreement.
The trust agreement specifically provides that a majority of the bondholders may direct the trustee to waive defaults. Approximately two thirds of the bondholders have so advised the trustee, and it is complying with their request.
The regulation and supervision of mortgage trust agreements is provided for under article 4-A of the Real Property Law, known, as the Streit Act. It was adopted to help correct abuses that had arisen with reference to public investment in real estate mortgages covered by trust indentures. (Harper v. Larchmont Yacht Club, 38 N. Y. S. 2d 505; N. Y. Legis. Doc., 1936, No. 66, p. 9.)
In Hazzard v. Chase Nat. Bank (159 Misc. 57, affd. 257 App. Div. 950, affd. 282 N. Y. 652, rearg. den. 283 N. Y. 682), there is a detailed commentary on the liabilities and responsibilities of the trustee in mortgage trusts. The court discussed the effect of “ exculpatory ” clauses, such as the right of the majority to waive defaults. Such clauses are generally upheld so long as they are not contrary to the public policy of the State of New York. The trustee in Hazzard limited its liability in several instances, and the limitations were upheld. The general permissiveness of the agreement was sharply criticized but nevertheless sustained as the “ well-settled doctrine of this State that so long as the trustee does not step beyond the provisions of the indenture itself, its liability is measured, not by the ordinary relationship of trustee and cestui, but by the expressed agreement between the trustee and the obligor of the trust mortgage. Where the terms of the indenture are clear, no obligations or duties in conflict with them will be implied. ’ ’ (Hazzard v. Chase Nat. Bank, 159 Misc., supra, pp. 80-81).
The Hazzard decision dealt primarily with the problem of attempting to surcharge a trustee for acting in a manner questionably prudent, although within the authority of the indenture. The court in upholding the trust indenture observed the injustice which occurs in binding a bondholder to an agreement which is seldom read. Furthermore, the effect of the agreement was to make the ‘‘ trustee ” little more than a stakeholder. (See 33 Col. L. Rev. 97 and 42 Harv. L. Rev. 198.) The court felt that such a ruling was an unjust result, but was consistent with existing law. The argument was presented that the trustee should be required “ to live up to the responsibility which nearly every purchaser assumes it has * * * by * * * the designation ‘ trustee ’ ”. (Hazzard v. Chase Nat. Bank, 159 *113 Misc., supra, p. 85.) The court pointed out the need for legislation and referred to the bill then pending before the Legislature by Mr. Streit which, after the decision, was passed and became article 4-A of the Beal Property Law.
The purpose of article 4-A is “ to the end that [trust] interests will be properly conserved, administered and ultimately liquidated.” (Beal Property Law, § 124). Its clear intent is to change the law and make it essential that the trustee have greater responsibility. The fact that he has the support of a majority of the beneficiaries for the procedure he has elected to follow, does not relieve him of a duty to act in a careful, prudent manner to conserve the assets and protect the bondholders.
Article 4-A is a statement of public policy designed to eliminate evils which had developed through the use of mortgage trust indentures. In some ways it has created a dilemma for the trustee which is graphically illustrated by this case. On the one hand, the statute seems to impose a responsibility beyond that of a mere stakeholder bound only by the indenture. Conceivably, the trustee can be surcharged in one instance for ignoring the terms of the agreement or in the same situation for refusing to act contrary to its terms. Should he elect to foreclose to protect the assets of the minority against the mandate of the majority and a loss occurs, he could be liable to the majority. He could also be liable for refusing to foreclose to the detriment of the minority.
Under the statute, the trustee has the authority, without any request from the bondholders in the event of a default, 1 ‘ with due diligence, prudence and care and in his discretion: * * * (d) to declare due and payable forthwith any principal amount remaining due and unpaid and commence an action of foreclosure ” (Beal Property Law, § 126, subd. 3, par. [d]). (Since there are no rents or income available, there is no other alternative provided for under section 126.)
Deeds of trust frequently contain provisions authorizing the holders of a specified number of (bonds) to waive a default. Although the validity of .such provisions has not been denied the tendency of the courts appears to be to construe them strictly and to hold them inapplicable wherever possible. (55 Am. Jur. 2d, Mortgages, § 369.)
The statute explicitly eliminates the need for bondholder action or approval and places the responsibility on the trustee to make the decision whether or not to act in the event of a default. In the original Streit proposal, there was a clause which would have relieved the trustee of the duty to act in the event of *114 a default if such a procedure was consistent with the wishes of a majority of the bondholders. This proposition was apparently considered by the Legislature and dropped and does not appear in the final bill. (Report to the Legislature by the Streit Committee, N. Y. Legis. Doc., 1936, No. 66, p. 9.) In any event, article 4-A is to be liberally construed to protect the bondholders. (Real Property Law, § 130-h.)
It has been argued that section 126 imposes an absolute duty upon the trustee to follow its procedures in the event of a default. (Harper v. Larchmont Yacht Club, 38 N. Y. S. 2d 505.) But the statute does not go that far. The trustee is obligated to act with due diligence, prudence and care, and those are the tests to be used in measuring his exercise of discretion. (38 N. Y. Jur., Mortgages and Deeds of Trust, § 14, p. 35.)
Since there is a possible problem for a trustee, a court of equity can and should consider the question and if reasonable permit a deviation by the trustee from the terms of the indenture consistent with the intent of article 4-A. Prior to the passage of article 4-A the court was only to exercise this power in the face of an unforseeable emergency. (Chase Nat. Bank v. Manila Elec. Co., 180 Misc. 483; Colorado & Southern Ry. Co. v. Blair, 214 N. Y. 497.) Article 4-A implies that such action is justified at any time whenever the interests of justice and vital rights of bondholders are at stake.
Trustees have been permitted to waive breaches of trust (City Bank Farmers Trust Co. v. Smith, 264 N. Y. 396, 398). Also, bondholders have also been permitted to commence actions in their own name (O’Beirne v. Allegheny and Kinzua R. R. Co., .151 N. Y. 372, 379), since they are the beneficiaries of the trust mortgage and whatever rights vested in the trustee inure to them especially when the trustee has refused or neglects to act. (Beveridge v. New York El. R. R. Co., 112 N. Y. 1, 26; see, also, 55 Am. Jur. 2d Mortgages, .§§ 23-24; 90 ALR 2d 495.) But, no such rights have been allowed to minority bondholders. Admittedly, the minority bondholders consented to the terms of the indenture and should not be permitted to dictate to the majority. (55 Am. Jur. 2d, Mortgages, § 22.) But the trustee owes an equal duty to all the bondholders. (United Hotels Co. of Amer. v. Mealey, 147 F. 2d 816; Clinton Trust Co. v. 142-144 Joralemon St. Corp., 287 App. Div. 789; also Ann. 90 ALR 2d 507.) The trustee cannot be relieved of that responsibility by majority vote. The .statute makes no such provision.
In Chicago Tit. & Trust Co. v. Chief Wash Co. (368 Ill. 146), the trustee elected to foreclose over the objections of the *115 bondholders. Its action was upheld although Illinois does not have a statute similar in purpose to article á-A. The court acknowledged that the trustee was bound by the trust instrument. However, when he is vested with the power to exercise discretion, the court declined to interfere so long as he was acting in good faith “ and not in a wholly unreasonable and arbitrary manner ” (supra, p. 155; citing 3 Bogert on Trusts and Trustees, § 560). Thus, Illinois recognized that discretionary power was not restricted by the trust agreement. The New York courts previously tended to uphold the terms of the trust agreement and restrict the trustees ’ action accordingly unless the agreement was contrary to a statute or public policy. (Benton v. Safe Deposit Bank of Pottsville, Pennsylvania, 255 N. Y. 260, 265; King v. Franmor Equity Corp., 260 App. Div. 303; Colorado and Southern Ry. Co. v. Blair, 214 N. Y. 497, 512; Green v. Title Guar, and Trust Co., 223 App. Div. 12.)
Article 4-A was designed to statutorily express a change in the public policy of the State of New York with reference to mortgage trusts. The trustee cannot freely limit its liabilities and responsibilities under the trust indenture in a manner which would be inconsistent with the statutory policy. More particularly, the trustee cannot restrict its duties by contract to that of a stakeholder. A trustee is required to act in the more traditional sense, assuming the obligations of care and prudence in the performance of his duties. The bondholders have a right to rely upon the trustee to protect their rights especially when the trustee is a corporate trust ostensibly in business for that purpose. This is particularly true when the trustee is authorized and expected to act without any consultation or urging from the bondholders. (Real Property Law, § 126, subd. 3.)
Owners of a substantial, yet minority, block of bonds are objecting to the treatment they are receiving. For more than 10 years the project has been stalled in a community of constant growth. From the record, the trustee has done nothing for over 10 years. Interest has been in default, no rent or income has been collected, and the contract providing for redemption of the bonds in 1966 has been ignored. The Statute of Limitations has run and is running with reference to interest payments, and the trustee has not received waivers or taken any action to protect the bondholders’ rights.
Admittedly, the mortgagor Skyridge Country Club, Inc., has been having difficulties. Certainly, the trustee is not benefiting, since it has not even received nominal fees. It argues that it should not have to commence foreclosure without getting legal *116 fees in advance. Its obligations under article 4-A are not contingent upon cash advances. Its duties are imposed to protect the bondholders; it accepted the responsibility and cannot escape it because there are no funds available. It would be inconsistent to require the bondholders to advance more money to finance the trustee in the performance of its statutory duty.
Although discretion is a key word, a delay of 10 years with absolutely no action taken to protect the bondholders from substantial and continuing losses is not a proper exercise of. discretion. Generally, the proper remedy for the failure of a trustee is to replace him. However, under the circumstances of this case and the dilemma facing the trustee, that would be a harsh and unjust result.
Therefore, the trustee is directed to take action to protect the rights of all the bondholders. Since there are no income, rents or profits, the only other course available to it is to foreclose, and it is directed to do so.